THE SHEPARD PAINT CO. ET AL., APPELLANTS, *v.* BOARD
OF TRUSTEES OF THE FRANKLIN COUNTY VETERANS
MEMORIAL ET AL., APPELLEES.

(No. 4419—Decided April 21, 1950.)

*Mr. John H. Summers* and *Messrs. Wright, Harlor,
Purpus, Morris & Arnold,* for appellants.

*Mr. Ralph J. Bartlett,* prosecuting attorney, *Mr.
Robert P. Barnhart* and *Mr. Joseph J. Poorman,* for
appellees.

MILLER, P. J. This is an action to enjoin the Board of Trustees of the Franklin County Veterans Memorial from proceeding with its action in the Probate Court to appropriate certain real property for public use and for an assessment for the compensation for the same.

On October 6, 1945, the county commissioners of Franklin county, Ohio, pursuant to the provisions of the Veterans Memorial Act (Sections 3059 to 3069-1, General Code), by resolution declared a necessity for proceeding with the establishment of such a memorial and for the issuance of a $4,500,000 bond issue. In view of their desire to place the levy for this bond issue outside the 10-mill limit, the question was submitted to a vote of the electorate at the November 1945 election. A favorable vote was received. Upon certification of the results of the election the county commissioners appointed a board of trustees as provided by Section 3061, General Code, for the purpose of establishing the memorial. The trustees submitted to the county commissioners plans for the site to be acquired and the plans were approved by the commissioners on April 2, 1946. Later the design of the building was completed and submitted to the county commissioners and approved by them on June 20, 1947. Bonds to the extent of $3,500,000 were issued and sold and the proceeds deposited in the memorial fund established by the provisions of Section 3064, General Code. A portion of this fund has already been expended for the acquisition of certain portions of the proposed site and for incidentals. The plaintiff Sigmund Ornstein is the owner of four parcels of property included in the proposed site.

On November 2, 1949, the defendants herein filed their petition in the Probate Court for the purpose of condemning Ornstein's four parcels of real estate and to have a jury assess the amount of compensation to

be paid to the owner. The plaintiffs thereupon filed a petition in the Common Pleas Court requesting an injunction against the further proceedings in the condemnation case in the Probate Court, on the grounds that the proceedings and the assessment compensation would be a confiscation of the property without due process of law and in violation of the Constitution and statutes of the state of Ohio.

The plaintiffs set forth the following four grounds of objection:

"1. There is no money in said memorial fund except the money resulting from said bond sales by said board of commissioners, which sales and levies of taxes in connection therewith were for the sole purpose of purchasing a site * * *, and none of such money may be used to compensate plaintiffs for any of their property sought to be acquired by condemnation.

"2. The amount of money allotted by said board of commissioners in their resolution of October 6, 1945, for the purchase of the site of said veterans memorial has been entirely expended by said board of trustees in the purchase of other lands and no money is available to compensate the plaintiffs for any of their property sought to be acquired by condemnation.

"3. Said board of commissioners has not approved the design of the proposed veterans memorial which said board of trustees intends to erect.

"4. In the declaration of necessity and determination to take parcel No. 1 said board of trustees have abused their discretion and are acting oppressively and in bad faith."

It is plaintiffs' claim that the only remedy available is by injunction to stop further condemnation proceedings; and that the Probate Court has no power to determine the legality of the proceedings, but is only authorized to fix the value of the property sought to be condemned.

The first claim made is that the proceeds from the bond issues cannot be used in payment for any land acquired through condemnation proceedings, since the enabling statutes, Sections 3059 and 3059-1, General Code, refer to the levying of taxes "for purchasing a site" and for the issuing of bonds "for the purpose of purchasing a site."

Section 3064-2, General Code, provides in part:

"The board of trustees may acquire by purchase, condemnation, or otherwise, any necessary site or sites for such memorials."

From this it is argued that the General Assembly must have intended, in accordance with the provisions of Sections 3059 and 3059-1, General Code, that the proceeds of taxes or bond issues were restricted in their use to the acquisition of property by ordinary purchase and could not be used to pay for property acquired by condemnation proceedings, as otherwise it would have provided in Sections 3059 and 3059-1, General Code, that the money raised might be used to acquire property by purchase, condemnation, or otherwise. If this is the proper interpretation to be placed on Sections 3059 and 3059-1, General Code, then there are no funds available to pay for the plaintiffs' property. The trial court stated, and we think correctly so, that under such an interpretation it would be virtually impossible to carry out the provisions of the act, if the owners of any of the property within the chosen site were unwilling and refused to sell; that since the statute specifically grants power to the trustees to carry out the provisions of the act, to secure property by condemnation, it is a reasonable conclusion that the General Assembly was not granting a meaningless power but must have intended to include the power to pay the assessed valuation of the property. In determining the express intention of the General Assembly, the sections of the Code involved

must be construed *in pari materia*. The authorities seem to be in agreement that the word, ''purchase,'' has two significations, a popular but restricted one and a legal but enlarged one. A ''purchase'' in the popular acceptance of the term is the transfer of property from one person to another by his voluntary act and agreement founded upon a valuable consideration. The legal or enlarged definition is found in 3 Washburn Real Property (6 Ed.), 3, Section 1824:

''Purchase including every mode of acquisition known to the law, except that by which an heir, on the death of an ancestor, becomes substituted in his place as owner by the act of the law.''

In Sutherland's Statutory Construction (2 Ed.), 753, Section 395, it is stated that words in common use, and also having a technical sense, will, in acts intended for general operation and not dealing specially with the subject to which such words in their technical sense apply, be understood primarily in their popular sense, unless they are defined in the act or a *contrary intention* is *otherwise manifest*. It is our conclusion, in giving consideration to the various sections of the Code applicable to the matter, that the word, ''purchasing,'' in Sections 3059 and 3059-1, General Code, was used in its technical or broader sense. We think that it was the intention of the General Assembly in this case to confer upon the board of trustees the right to condemn property for the purpose of providing a site for the memorial and that the authority to issue bonds for the purchase of the site included the right to pay the assessment. To interpret the term, ''purchase,'' in the narrow sense as advanced by counsel for the plaintiffs, the object of the statute would in many cases be defeated.

In the case of the *United States* v. *2.74 Acres of Land*, 32 F. Supp., 55, it was held:

"Statutory authority to acquire land for a public use by purchase is authority to acquire by condemnation."

We are of the further opinion that even if the funds now available in the memorial fund could not be used for the purpose of paying the purchase price set in the condemnation proceedings, such fact would still not constitute a ground for the issuance of an injunction restraining the proceedings.

Counsel for the plaintiffs cite *State, ex rel. MacDiarmid,* v. *Eastman, Judge,* 118 Ohio St., 121, 160 N. E., 626, as authority for the position they have taken. It was there held that a writ of prohibition was not the proper remedy to be invoked, under facts somewhat similar to those here involved, and that if any relief was due the plaintiffs, it must be by way of injunction proceedings. We concede that an injunction proceeding is proper to prevent an unwarranted or unauthorized proceeding in appropriation. *P. C. C. & St. L. Ry. Co.* v. *City of Greenville,* 69 Ohio St., 487, 69 N. E., 976; *Cleveland & Pittsburgh Rd. Co.* v. *City of Martins Ferry,* 92 Ohio St., 157, 110 N. E., 642. But in the case at bar the board of trustees is expressly authorized by Section 3064-2, General Code, to acquire a site by purchase, condemnation or otherwise. Whether the money is available to purchase the site is not a material allegation in an appropriation proceeding. The right of eminent domain is a statutory right and one which has been said to be "strictly regulated by statute." *P. C. C. & St. L. Rd. Co.* v. *Greenville, supra,* at page 496.

Section 11042, General Code, sets forth the requirements to be set out in the petition in condemnation proceedings:

1. A specific description of the property involved.
2. The work, if any, to be done thereon.

3. The use to which the property is to be applied.

4. The necessity for the appropriation.

5. The name of the owner of the property, if known, or if not known, a statement of that fact.

6. The names of all persons having or claiming an interest in the property.

7. The prayer for its appropriation.

It will be noted that no allegation is required as to the manner or method of payment of the assessments. A failure to pay the assessed value within six months terminates the right to the appropriation of the land. Section 3697, General Code. It would seem that by this section the defendants would have the right to comply with the judgment within a period of six months thereafter.

In the case of *City of Dayton* v. *Vance,* 26 N. P. (N. S.), 161, in giving consideration to the funds available for the payment of the assessment, the court said:

"We decide that this question has no proper place in this proceeding. This is, as suggested by counsel for defendants, a statutory right and one which has been said to be 'strictly regulated by statute.' *P. C. C. & St. L. Ry.* v. *Greenville,* 69 Ohio St., 487, at 496. Finding no restrictions placed upon the right of eminent domain when exercised by a municipal corporation—the statutes being silent upon any such requisites as to funds then available—we conclude that the contentions of the city must prevail.

"It is the same as reading into the statutes the words, 'provided, that the court shall find that the city then has funds available: (1) to pay for the land appropriated; and (2) to fully complete the plan, enterprise or structure for which the land is appropriated.' "

In the case of *Jones* v. *Village of Maumee,* 20 Ohio App., 455, 152 N. E., 765, the plaintiff sought an injunction restraining the appropriation of his land for

street purposes, alleging that the land was unfit, and that it would entail expenditures of $50,000 which was in excess of the amount the village may so expend. The Common Pleas Court dismissed the petition and the judgment was affirmed by the Court of Appeals. The syllabus of that case provides:

"The General Assembly having delegated to municipalities the authority to appropriate private property for street purposes, the necessity of the appropriation, and the location and extent of the property to be taken, rest in the discretion of the municipal authorities, and will not be interfered with by the courts, in the absence of fraud, bad faith, or abuse of discretion."

At page 459, the court said, quoting from *Sargent* v. *City of Cincinnati*, 110 Ohio St., 444, 144 N. E., 132:

" 'The power of eminent domain is an attribute of sovereignty which may be exercised by the Legislature itself, or that power may be delegated to other governmental agencies, and as a general rule the only limitation upon this legislative authority is that there must not be an abuse of the power granted or bad faith in its existence or exercise.

" 'All these legislative functions relate to the necessity and exigency of the taking, but owners of private property may judicially inquire whether the specified use is a public use or whether such use will justify or sustain the compulsory taking of private property, and even though the legislative authority has declared the use to be a public one, the courts may properly inquire into the good faith of such declaration and whether there has been a manifest abuse of power.'

"In the case at bar the amended petition contains no averment of fraud, bad faith, or abuse of discretion. The purpose for which the village of Maumee seeks to appropriate the property, to-wit, for the construction of a street, is clearly a public use. The necessity of the appropriation, and the location and extent of

the property to be taken, were for the decision of the village council, and with that action the courts are powerless to interfere in the absence of fraud, bad faith, or abuse of discretion.

"The amended petition does not state a good cause of action."

The second ground set forth in the plaintiffs' petition recites that the money in the fund has been entirely expended and therefore there is no money available. Under the authority of *Jones* v. *Maumee, supra,* and *City of Dayton* v. *Vance, supra,* this is an immaterial allegation. Moreover, Section 2293-10, General Code, makes provision for a transfer of the funds from one class to another under certain conditions which could prevail in this case, and therefore funds would be available.

The allegation that the county commissioners have not approved the design of the proposed building is not substantiated by the evidence, as the record discloses that on April 2, 1946, the county commissioners approved the site selected by the trustees and on June 20, 1947, they approved the design for the building.

Lastly, it is claimed that the board of trustees has abused its discretion and is acting oppressively and in bad faith in appropriating the plaintiffs' property, especially parcel No. 1, which is located at the western end of the site under consideration for condemnation; and that it is not needed for public purposes and therefore the defendants are not proceeding in good faith. Although there has been some change made in the design of the memorial site and buildings thereon, nevertheless it is still the opinion of the county authorities that the entire site is necessary for the purpose for which the condemnation proceedings have been instituted. The record discloses that parcel No. 1 will be used for driveway and parking purposes which are necessary to the proper usage of the memorial build-

ings and site. The board of county commissioners and the board of trustees of the memorial fund have made their decision and have determined the necessity and extent of the property to be taken for this project. This constitutes an exercise of legislative authority and the subject is a question for legislative determination. There is no evidence of fraud, bad faith or abuse of discretion in the absence of which this court is powerless to act.

"* * * the necessity for the exercise of the power of eminent domain and the quantity of land necessary being a question for legislative determination, not reviewable by the courts, unless possibly where there has been a gross abuse of legislative discretion or manifest fraud." *Clendaniel* v. *Conrad, Judge*, 3 Boyce, 549, 83 A., 1036.

In *Sears, Trustee,* v. *City of Akron,* 246 U. S., 242, 62 L. Ed., 688, 38 S. Ct., 245, Mr. Justice Brandeis, speaking for the court, said that it is well settled that, while the question of whether the purpose of the taking is a public one is judicial, the necessity for and proper extent of the taking is a legislative question. The rule thus announced is fundamental and has been in force and applied by the courts from time immemorial and under a variety of circumstances.

In giving consideration to the nature and purpose of the intended improvement this court cannot say that there has been an abuse of discretion in the selection of the amount of the property which the board of trustees seeks. The plat submitted shows a well proportioned and harmonious plan as to the actual structures and the necessary adjuncts, both from utilitarian and aesthetic viewpoints, which should have a material bearing on the question here involved.

It is our conclusion from the evidence and the facts

submitted that the entire site which is contemplated to be used for the improvement is reasonably necessary and required for the purposes intended. On the issues joined this court finds in favor of the defendants and orders that the petition be dismissed at plaintiffs' costs.

*Petition dismissed.*

HORNBECK and WISEMAN, JJ., concur.