40047.   NORTHEAST  FACTOR  &  DISCOUNT  COMPANY
v.  MORTGAGE  INVESTMENTS,  INC.  OF  GEORGIA.

Decided May 2, 1963.

*Alton T. Milam,* for plaintiff in error.

*Hansell, Post, Brandon & Dorsey, W. Rhett Tanner, Charles E. Watkins, Jr.,* contra.

EBERHARDT, Judge. ■ ■ ■ *Did the form of the transfer here amount to a general indorsement, a special indorsement, or an assignment only?*

While there is a hopeless conflict of authority as to the effect of a transfer in the form used here, the majority rule both before and after adoption of the Negotiable Instruments Law has been and is that the effect is that of a general or commercial indorsement. 8 Am. Jur. 254, Bills & Notes, § 546; Annot.

44 ALR 1354; Beutel's Brannan, Negotiable Instruments Law, § 31, p. 601 (7th Ed. 1948); and see, Assignment on Back of Notes as Indorsement, 19 Cal. L. Rev. 324 (1931). Prior to the adoption of NIL[1] the majority rule had been adopted in Georgia. *Vanzant, Jones & Co. v. Arnold,* 31 Ga. 210, 212 (2); *Smith v. Brooks,* 65 Ga. 356; *Chandler v. Smith,* 147 Ga. 637 (2) (95 SE 223); *Benton Transfer Co. v. Marion Nat. Bank,* 26 Ga. App. 562 (106 SE 735). The only case dealing with the matter after adoption of the NIL that we have found is *McCullough v. Stepp,* 91 Ga. App. 103 (85 SE2d 159). While it is stated in the body of that opinion that such a transfer constitutes a *special indorsement,*[2] a reading of the record and the full opinion reveals that the question before the court was whether it amounted to a *qualified* indorsement or whether it could be shown by parol evidence that the intention of the parties was that it be a qualified indorsement. The court properly held that it neither was nor could be shown to be a qualified indorsement.

We need not here determine whether the form of transfer used is an assignment, for even if it is "[t]he general rule is that a writing on the back of a bill or note with the intention of transferring title is an indorsement, although it is in terms

[1] Repealed by Uniform Commercial Code (*Code Ann.* § 109A-10—103), which, however, does not become effective until January 1, 1964. (Ga. L. 1963, p. 188). With some clarifying changes the NIL is basically carried forward in Article 3 of the Commercial Code. See *Code Ann.* § 109A-3—101, et seq.

[2] It will be observed that in making this statement *Chandler v. Smith,* 147 Ga. 637, supra, was cited as authority but the Supreme Court in that case specifically held the transfer to be a general indorsement. Although §§ 33 and 34 of NIL (*Code* §§ 14-404, 14-405) are referred to in *McCullough,* it is not asserted that the adoption of the NIL had the effect of changing the rule theretofore adopted in *Vanzant, Smith, Chandler* and *Benton.* Indeed, since the majority of jurisdictions, having previously adopted the rule, continued to adhere to it after the adoption by them of the NIL, it must follow that it did not effect a change. It would appear then, that we are bound by the Supreme Court rulings on the matter.

an assignment. . ." 10 CJS 695, Bills & Notes, § 208; Beutel's Brannan, Negotiable Instrument Law, § 31, p. 601. Of course, if the transfer had not been entered on the note itself we should be confronted with a different situation.

But it would not matter whether we followed the majority rule giving the transfer the status of a general indorsement, or the minority rule giving it that of a special indorsement, in reaching our conclusion here. In either situation the transferor engages to pay the note, for the only manner in which that might have been avoided was to negative it specifically by use of the words "without recourse," or words of similar import, as provided by NIL § 38 (*Code* § 14-409). This was implicit in *McCullough*. Unless one who places his name upon an instrument wishes to be bound as an indorser he must clearly indicate the contrary by appropriate words. NIL § 63 (*Code* § 14-604). The words of the transfer "are to be construed as strongly as their sense will allow against those using them." 1 Daniel, Neg. Inst. § 688c (6th Ed.), cited approvingly in Prichard v. Strike, 66 Utah 394 (243 P 114, 44 ALR 1348, 1351).

There can be no question here but that Mortgage Investments was an indorser with the attendant liability of one in that position.

But even if it be conceded that the indorsement was special, retaining the character of the note as order paper, it does not follow that since no further indorsement appears by the transferee as required by § 34 (*Code* § 14-405) the plaintiff did not acquire legal title in purchasing from the receiver, and cannot maintain this suit at law in its own name. Prior to the adoption of NIL this contention would have been meritorious. *Burch v. Daniel,* 101 Ga. 228 (28 SE 622); *Haug v. Riley,* 101 Ga. 372 (29 SE 44, 40 LRA 244); *Allen v. Commercial Credit Co.,* 30 Ga. App. 377 (118 SE 499). But § 49 of NIL (*Code* § 14-420) changed that. It is now settled that a transfer for value, without indorsement, vests in the transferee such title as the transferor had, and the transferee may bring suit thereon in his own name. *Christie v. Bassford,* 47 Ga. App. 94 (169 SE 687); *Folsom v. Continental Adjustment Corp.,* 48 Ga. App. 435 (172 SE 833); *Stone v. Colonial Credit Co.,* 93 Ga. App. 348 (1) (91 SE2d

835); *Robbins v. Welfare Finance Corp.*, 95 Ga. App. 90, 92 (96 SE2d 892).

■ *Are there allegations in the petition, as amended, that plaintiff acquired the note for value?*

It is alleged, by the amendment, that "Dealers Discount and Investment Company, the holder of the note sued on was declared insolvent, a receiver was appointed and your *plaintiff purchased the note sued on . . .*." and that *"plaintiff purchased at the receiver's sale the note sued on . . .* and a transfer of title to the same by bill of sale from the receiver, which sale was approved by order of . . . Fulton Superior Court."

True enough there is no allegation in the petition or the amendment which specifically alleges that plaintiff paid value for the note, or what he may have paid for it. However, words are to be afforded their ordinary meaning and signification in this context. Webster's New International Dictionary (2d Ed., 1954) defines "purchase" to mean, *inter alia*, "to obtain anything by paying money or its equivalent; to buy for a price." Many courts have given similar definitions of the word. As used in reference to negotiable paper, it means "to pay a certain sum for it, the standard of which is fixed by the agreement of the parties." Ridgway v. National Bank of New Castle, 12 Ky. L. Rep. 216, 220. It means to obtain by paying or promising to pay a price. Hodge Ship Bldg. Co. v. City of Moss Point, 144 Miss. 657 (110 S 227, 229). And see Shepard Paint Co. v. Board of Trustees etc., 88 Ohio App. 319 (100 NE2d 248, 251); Cobb v. Webb, 26 Tex. Civ. App. 467 (64 SW 792, 793); Shaw v. Dreyfus, 172 F2d 140, 142.

It is alleged that plaintiff received from the receiver a bill of sale, duly approved by the court. "[A] 'bill of sale' in its legal and technical sense is an instrument passing title to personal property." *Wilson v. Voche*, 48 Ga. App. 173 (172 SE 672).

"[S]ales under decrees in equity are always subject to confirmation by the judge, who has a sound legal discretion with reference thereto, and . . . such sales are not consummated until thus confirmed." *Sims v. Ramsey*, 186 Ga. 732 (2) (198 SE 770).

It is elemental, requiring no citation of authority, that the court will not authorize a receiver or trustee to sell assets in his custody without receiving value therefor. It has no authority to do so. The receiver, a fiduciary, is held to a higher standard than that of people dealing in the market place. His duty is to administer the assets in such manner as to receive their highest value for the benefit of the estate and of creditors. It is presumed that both the receiver and the judge of the court, in the making and confirmation of the sale, have faithfully discharged their duty. "Unless the contrary appears, it will be presumed that all public officers . . . have performed their official duties at the proper time and in the proper manner." *Kight v. Gilliard,* 215 Ga. 152 (109 SE2d 599). Like the judge, the receiver is an officer of the court. *Code* § 55-301; *Tindall v. Nisbet,* 113 Ga. 1114 (1) (39 SE 450, 55 LRA 225).

"The simplest test of the sufficiency of a petition against general demurrer is whether the defendant can admit all that is alleged and still escape liability." *Harvey v. Zell,* 87 Ga. App. 280, 284 (1d) (73 SE2d 605).

The allegations in the amendment sufficiently allege, as against a general demurrer, that plaintiff acquired the note "for value." If the defendant desired detailed information as to what was paid for the note when plaintiff purchased it, that might have been obtained by a special demurrer.

■ *Does failure to allege in the petition that the defendant, an indorser, was given notice of dishonor release it from liability?*

The face of the note carried the provision that "[t]he undersigned, whether maker or endorser, waives demand, protest and notice of demand, protest, and non-payment." One "may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." *Code* § 102-106. By its indorsement the defendant became bound by this provision of the note, and since a copy of the note was attached to the petition no allegation of notice to it of dishonor was necessary.

■ *Form of amendment.*

The paragraphs of the amendment were numbered 1 through 5 consecutively, and defendant here contends that this rendered

the matter of whether it was sought to substitute these paragraphs for those of like numbers in the petition, to effect changes in those corresponding paragraphs, or to add them as additions to the petition so uncertain that it made the amendment fatally defective, and that since the original petition was so without the amendment, the sustaining of the general demurrer was proper. While it is not good form in pleading, and ought not to be employed, yet a mere inspection of the petition and amendment here can leave no doubt that the purpose of the amendment was to add the paragraphs of the amendment as additions to the petition. Only by a strained and unreasonable construction of the petition and the amendment can one reach any other conclusion, and such is neither required nor proper. *Neal v. Stapleton,* 203 Ga. 236, 245 (46 SE2d 130); *New Cigar Co. v. Broken Spur,* 103 Ga. App. 395 (119 SE2d 133); *National Fire Ins. Co. v. Banister,* 104 Ga. App. 13 (1) (121 SE2d 46). If the trial court sustained the demurrer for this reason, it was error.

■ *Special demurrers.*

■ We have dealt with the matter of the paragraphing and numbering of the paragraphs in the amendment in our treatment of the general demurrer above. For the same reason the sustaining of the special demurrer on that ground without opportunity to correct this situation by further amendment was error. It might have been good basis of objection to the allowance of the amendment.

■ There was no error in sustaining a special demurrer to an allegation in the amendment that "plaintiff has exhausted all of its resources to collect said judgment from the original maker" on the ground that it is a conclusion.

■ While the special demurrer to paragraph 2 of the amendment in which plaintiff alleged that it purchased the note at the receiver's sale, on the ground that neither the date of the sale nor the consideration paid for the note is alleged was properly sustained, yet the plaintiff should have been afforded opportunity to amend in these respects.

■ The special demurrer to the allegation of paragraph 4 of the amendment in which a demand for payment of the note

is alleged, calling for information as to who made the demand, the date of the demand, and on whom made, was properly sustained, but the plaintiff should be afforded opportunity to amend.

■ The special demurrer to the allegation that "plaintiff is a holder in due course for value the note sued on," was properly sustained upon the ground that other portions of the petition show that this allegation was not true.

■ The special demurrer to a portion of paragraph 5 of the amendment alleging that "the defendant herein being an endorser and transferred said note before it was declared due and payable for value received in due course," calling for information as to whom, by what act and when the note was declared to be due, and that the phrase "received in due course" as there used is vague and indefinite in meaning, was properly sustained. Again the plaintiff should be afforded opportunity to amend.

■ There was no merit in the special demurrer to the whole of paragraph 5 of the amendment on the ground of vagueness.

■ *Holder in due course.*

Although plaintiff alleges that it is a holder in due course, it should be observed that this can not be, for it is also alleged that the note had been reduced to judgment against the maker before the sale by the receiver. Obviously plaintiff took it after it was overdue. *Code* § 14-502.

*Judgment reversed. Felton, C. J., and Russell, J., concur.*