2000 ND 88

**MATRIX PROPERTIES CORPORATION, a Minnesota corporation, formerly known as E.W. Wylie Corporation, Plaintiff and Appellee**

v.

**TAG INVESTMENTS, a North Dakota partnership, and James A. Grettum, an individual resident of North Dakota, Defendants and Appellants**

No. 990336.

Supreme Court of North Dakota.

April 27, 2000.

Rehearing Denied May 30, 2000.

Sidney J. Spaeth, Vogel, Weir, Bye, Hunke & McCormick, Ltd., Fargo, for plaintiff and appellee.

Jonathan T. Garaas, Garaas Law Firm, Fargo, ND, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] TAG Investments and James A. Grettum ("TAG") appealed from a summary judgment in favor of E.W. Wylie Corporation ("Wylie"), granting specific performance of an option agreement. TAG asserts Wylie failed to exercise its option, and alternatively, its exercise of the option was conditional. Wylie timely and unconditionally complied with the option agreement. We affirm.

[¶ 2] In October 1996, TAG agreed to sell Wylie certain real estate in Cass County. As part of the transaction, Wylie received an option to purchase approximately 114 additional acres from TAG. The real estate consisted of two tracts of land: Tract I was 35.52 acres and Tract II was 78.37 acres of land. The option to purchase required Wylie pay $9,375.00 per acre for the real estate and could be exercised any time before June 1, 2001 at 5 P.M.

[¶ 3] However, by its terms, exercise of the option required Wylie to make minimum purchases of the option land prior to June 1, 2001. Wylie was required to purchase at least 20 acres of land on or before June 1, 1999 and at least 40 acres on or before June 1, 2000.

[¶ 4] Within 10 days of Wylie exercising its option for an "Individual Parcel," TAG was required to deliver to Wylie an abstract of title for the parcel. If the abstract of title failed to disclose a "good and marketable" title, Wylie could declare the option and the exercise or partial exercise thereof null and void. If no objections were made by Wylie to the title, closing was to occur within 45 days of the notice. However, if Wylie objected to title, TAG could be granted up to 120 days to cure the title problems.

[¶ 5] On May 26, 1999, Wylie gave notice to James Grettum, a general partner of TAG, that it was going to purchase 21.82 acres of land pursuant to the option agreement. The letter, dated May 25, 1999, stated:

> This letter shall serve as our written intention to purchase 21.82 acres in the South portion of Tract II.
>
> Enclosed you will find a Certificate of Survey prepared by Ulteig Engineers describing the acres to be purchased. At your earliest convenience would you please supply us with an updated abstract.
>
> The legal description for the Abstract of Title should match the legal description on the enclosed Certificate of Survey. Please notify me when the abstract has been prepared so we may proceed with a title opinion. If you would prefer to have us order the abstract please notify me upon receipt of this letter.

[¶ 6] An abstract of title was obtained by Wylie on June 14, 1999. The abstract revealed an ambiguity in recorded documents and Wylie determined TAG must secure certain quit claim deeds to remove any ambiguities of title. On June 21, 1999, TAG transferred the 21.82 acre plot to Grettum. With closing scheduled for June 28, 1999, Grettum delivered a letter to Wylie on June 25, 1999, stating he had received the relevant real estate and TAG determined it was free of any obligations under the option to purchase because Wylie had not timely purchased 20 acres on or before June 1, 1999. Grettum was willing to sell the 21.82 acres with the following conditions:

1. The purchase price for the sale of the 21.82 acres will be $187,500, less any amounts the City of Fargo may pay me for a road right of way;

2. E.W. Wylie Corporation must acknowledge, in writing and in a recordable format, that the Option to Purchase dated October 14, 1996, is no longer in force or effect, and that it has been terminated by its own provisions because of the failure of E.W. Wylie Corporation to make the minimum purchase of 20 acres by June 1, 1999;

3. The closing be structured in such a manner that I can take advantage of a Section 1031 like-kind tax free exchange;

4. The closing take place on or before July 12, 1999, and I will not be required to do any corrective title work. E.W. Wylie Corporation must accept the property subject to all matters of record on June 2, 1999.

After receiving the letter, Wylie pressed to close on June 28, 1999, but refused to acknowledge the option to purchase had terminated. TAG relented and did not require Wylie to "acknowledge ... the Option to Purchase dated October 14, 1996, is no longer in force or effect, and that it has been terminated by its own provisions because of the failure of E.W. Wylie Corporation to make the minimum purchase of 20 acres by June 1, 1999." The parties closed on the 21.82 acre sale, with both parties having contradictory views on the effect of the sale.

[¶ 7] In early July, Wylie sent letters to TAG and Grettum, notifying them of its intent to exercise its option and purchase the remaining option property. TAG responded that it considered itself free of any further obligations under the option agreement, because Wylie had not tendered the purchase money prior to June 1, 1999. Wylie instituted this lawsuit against TAG and Grettum for specific performance of the option to purchase, alleging breach of contract, estoppel, waiver and fraud. Wylie moved for summary judgment, arguing Wylie had complied with the terms of the Option Agreement and was entitled to specific performance of the option. The district court agreed, granting summary judgment in favor of Wylie.

[¶ 8] Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Twichell v. Treitline*, 1998 ND 10, ¶ 6, 574 N.W.2d 194. On appeal, we review the evidence in the light most favorable to the party opposing the motion for summary judgment. *Id.*

I

A

[¶ 9] TAG argues Wylie failed to properly exercise the option agreement, pointing out Wylie's exercise was not in precise compliance with the option agreement. TAG, citing *Fries v. Fries*, 470 N.W.2d 232 (N.D.1991), contends Wylie did not precisely comply with the option's notice requirement or allow the abstract to be procured in the manner called for in the option.

[¶ 10] The exercise of an option, just like acceptance of an offer, must be unconditional. *Mason v. Haakenson*, 303 N.W.2d 557, 558 (N.D.1981). An optionee must exercise the option within the time and upon the terms and conditions provided in the agreement. *Id.* An attempt to exercise an option that deviates from the terms of the option acts as a rejection of the option and counteroffer. *Id.*

[¶ 11] In *Fries*, this Court held the exercise of an option failed because it deviated from the terms of the option agreement. After Jake and Mary Fries divorced, Jake received 240 acres of their farmland and Mary received 160 acres of farmland. Jake was also given an option to purchase all of Mary's 160 acres. After being diagnosed with cancer, Jake assigned to his seven children his option to purchase Mary's 160 acres. The children attempted to partially exercise the option by purchasing a six-sevenths interest of the property. A majority of this Court held exercise of the option failed because the agreement required full purchase of the entire quarter section. Since the children attempted to purchase only a six-sevenths interest in the quarter section, it was not in "exact compliance" with the option. *Id.* at 234.

[¶ 12] TAG asserts the option required a certified mailing to TAG, but the mailing went to James Grettum. Thus, Wylie did not precisely comply with the option agreement. This argument is without merit. It is undisputed Grettum is a general partner of TAG and under North Dakota law, notice to a partner is presumed notice to the partnership. N.D.C.C. § 45–13–02(6); *see* N.D.R.Civ.P. 4(d)(2)(D) (stating a partnership may be served by service to a partner). Considering TAG had no address provided in the option agreement, sending notice to Grettum was certainly reasonable.

[¶ 13] TAG also asserts Wylie was not in precise compliance with the provision that TAG would deliver a "continued abstract of title" to Wylie. TAG asserts Wylie was in possession of the abstract, but refused to look for it, requiring TAG to obtain a "new" abstract, rather than updating the "old" abstract. One portion of the option agreement refers to TAG pay-

ing for the "cost of continuing or preparing the abstract for WYLIE's initial title examination," adding ambiguity to the main premise TAG relies on. Nevertheless, on its face, the argument is still problematic. Nothing in the option agreement suggests exercise of the option was dependent upon the specifics of exactly how the abstract would be procured. Moreover, TAG has given no basis for there being a legal distinction between a "continued" abstract and a "new" abstract.

### B

[¶ 14] TAG's primary argument is that the option contract required Wylie to "purchase" 20 acres by June 1, 1999 and Wylie failed to comply with the option by not tendering purchase money before the deadline expired. TAG cites a dictionary definition of purchase, "to acquire by paying money," to prove tender of money is necessary to effect a purchase. TAG also points out, in support of its argument, the option contains a "time is of the essence" clause. At the outset, we recognize the term "purchase" cannot narrowly be interpreted as always requiring tender of money. *See State v. Jackson,* 271 Ga. 5, 515 S.E.2d 386 (1999) (defining purchase as " 'to obtain by paying or promising to pay a price' ") (quoting *Northeast Factor & Discount Co. v. Mortgage Investments,* 107 Ga.App. 705, 131 S.E.2d 221 (1963); N.D.C.C. § 41–01–11(32) (broadly defining purchase as "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property"). We conclude the term "purchase" when construed in light of other provisions in the option agreement, does not require tender of money.

[¶ 15] A further discussion of option law resolves TAG's argument. An option agreement is a contract where the owner of property (optionor or option-giver) gives another (optionee or option-holder) the right to buy the property at a fixed price within a specified time on agreed

terms. *Wessels v. Whetstone,* 338 N.W.2d 830, 832 (N.D.1983). The owner does not sell the property, but sells to the other party the right, at the optionee's election, to demand the conveyance in the manner specified. *Id.* Put another way, "an option supported by consideration is irrevocable for the life of the offer." *Estate of Jorstad,* 447 N.W.2d 283, 285 (N.D.1989).

[¶ 16] Since an option to purchase is merely an irrevocable offer for a limited time, the question is whether Wylie accepted TAG's offer, i.e., whether Wylie exercised the option to purchase. Contract law teaches acceptance comes in different forms, sometimes by performance and sometimes by a promise of performance, often depending upon what the offer specifies. *See Restatement,* Contracts 2d § 50 (1981) (concluding acceptance by performance requires at least part of the offer requests be performed or tendered, but acceptance by promise requires the offeree to complete every act essential to the making of the promise); 17A Am. Jur.2d *Contracts,* § 95 (1991) (stating "there are various modes of acceptance which are equally conclusive upon the parties"). For instance in a bilateral contract, both parties mutually promise to do a future act and the consideration of the promise of one party is a promise on the part of the other. 17A Am.Jur.2d *Contracts* § 5. Acceptance in a bilateral contract may be by a promise. *See* 77 Am.Jur.2d *Vendor and Purchaser* § 56 (1997) (stating "if the acceptance requested and furnished is a promise, the contract to sell is bilateral, binding each party to perform his promise").

[¶ 17] Applying these basic rules to option law, we said in *Northwestern Bell Tel. Co., v. Cowger,* 303 N.W.2d 791, 795 (N.D. 1981), "[w]here the exercise of the option to purchase does not provide for payment of the purchase price coincident with the optionee's exercise of the option, the payment of the purchase price is merely an incident of performance of the bilateral contract created by the exercise of the

option." As we said above, an option must be exercised within the time and upon the terms and conditions provided in the agreement. *Mason,* 303 N.W.2d at 558.

[¶ 18] As TAG points out, the option agreement required Wylie to "purchase 20 acres on or before June 1, 1999." However, under the heading, "Method of Exercise," the option agreement provided how the option was to be exercised:

> Exercise of this option to purchase shall be in writing either delivered to TAG in person or by certified mail prior to the expiration of the time granted by this option as hereinbefore set forth. WYLIE shall have the right to purchase the entire Property or as hereinafter specified portions of the Property (hereinafter referred to as Individual Parcel(s)). The notice(s) to exercise the option may hence pertain to a portion thereof and during the term of this Option Agreement. WYLIE may exercise the option as to successive portions of the Property. The notice to exercise this Option Agreement as to an Individual Parcel shall adequately identify the Individual Parcel to be purchased. Following said notice, the area identified will be precisely surveyed for a correct legal description and for determination of the amount of acreage that would determine the purchase price for said Individual Parcel.

The plain language of the option agreement states the option is to be exercised by giving notice to TAG adequately identifying the individual parcel to be purchased. Nothing in the contract requires Wylie to tender the purchase price in order to exercise the option. Thus, tender of the purchase price is an incident of performance, not a condition precedent to the exercise of the option. Because Wylie gave notice to TAG, specifically identifying an individual parcel to be purchased, prior to the June 1, 1999 deadline, it complied with the option to purchase and the fact it did not tender purchase money prior to June 1, 1999 is irrelevant. Although the option agreement has a "time is of the essence" provision, it does not change the option contract into one requiring tender of payment for exercise of the option.

## II

[¶ 19] TAG asserts Wylie failed to exercise the option because its May 25, 1999 letter was only a conditional acceptance, because Wylie could "get out" of the contract if necessary. It is not clear whether TAG is attacking Wylie's acceptance as conditional or whether TAG also challenges the written option agreement as conditional, but we will consider both arguments.

[¶ 20] As noted in section I, the exercise of an option must be unconditional. *Mason,* 303 N.W.2d at 558. An optionee must exercise the option within the time and upon the terms and conditions provided in the agreement. *Id.* An attempt to exercise an option that deviates from the terms of the option acts as a rejection of the option and counteroffer. *Id.* Wylie's exercise of the option was unconditional. As the option specified, it gave notice to TAG, specifically identifying an individual parcel to be purchased, prior to the June 1, 1999 deadline. Wylie did not attempt to deviate from the terms of the agreement.

[¶ 21] TAG suggests Paragraph 13 of the option agreement, which allowed Wylie to void the agreement if several contingencies were not satisfied, gave Wylie the ability to void the agreement at its whim. Thus, they apparently contend, the agreement was conditional and therefore unenforceable. Paragraph 13 states in relevant part:

> If the abstract of title fails to disclose the *title of TAG to be good and marketable or if there are easements, restrictive covenants or mineral grants and reservations of record not acceptable to Buyer as permitted encumbrances, or if there are building zoning laws, ordinances or state and/or federal*

*regulations that would hinder Buyer's intended use of the Property, WYLIE, at WYLIE's election, may declare this option and the exercise or partial exercise thereof null and void,* or WYLIE may offer TAG a reasonable time (but not more than 120 days) in which to make the title good and marketable or the concerns as to the acceptability of easements, restrictive covenants or mineral grants and reservations of record and building and zoning laws, ordinances and state and federal regulations addressed to Buyer's satisfaction. No objection can be raised, however, for matters stated to be acceptable in paragraph 19 below. If TAG agrees to attempt to cure the defects, TAG shall use due diligence in the effort to do so. If TAG does not undertake to make the title good and marketable and/or acceptable or is unable to make the title good and marketable and/or acceptable within such reasonable time as granted by WYLIE, it shall be at the option of WYLIE either to accept the title in its existing condition with no further obligation on the part of TAG to correct any defect or again have the right to declare its exercise of this Option Agreement void as to the Individual Parcel selected or to declare the entire Option Agreement void. Any Option Money paid or amount paid for Street Assessment theretofore shall be refunded to WYLIE should WYLIE select the latter option.

(emphasis added). Such "satisfaction" clauses are commonplace in contracts and do not cause the agreement to lack mutuality because, as shown below, an objective standard is nearly always employed in interpreting them. 13 Richard A. Lord *Williston on Contracts* § 38.22 (4th ed.2000).

[¶ 22] One treatise says of such clauses: Since, however, such a promise is generally considered as requiring a performance which must be satisfactory to him or her in the exercise of honest judgment, such contracts have been almost universally upheld. Because of the duty to act in good faith, a party's promise is not illusory; rather, the restraint that the obligation to act in good faith places on the promisor's discretion furnishes good consideration for the parties' agreement.

*Id.* at § 38.21. According to the Restatement:

When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance or with respect to something else, and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs if such a reasonable person in the position of the obligor would be satisfied.

*Restatement* (Second) of Contracts § 228. American Jurisprudence states, "If a contract contains a promise by the vendor to sell and one by the purchaser to buy, the fact that it contains a conditional option to one of the parties to rescind does not destroy its mutuality." 77 Am.Jur.2d *Vendor and Purchaser* § 31.

[¶ 23] This Court has recognized an objective standard is necessary in interpreting clauses similar to those in this case. In *Industrial Com'n v. McKenzie County Nat.,* 518 N.W.2d 174 (N.D.1994) one party argued an insurance contract was unenforceable because the policy required "good and marketable title" and the failure to have an easement recorded rendered title unmarketable. *Id.* at 178. This Court said marketable title is "one that is free from reasonable doubt." We further stated, "[w]e believe that reasonable persons could not differ that access to this property is free of reasonable doubt" and thus determined the contract should not be rescinded. *Id.*

[¶ 24] Although the option agreement had several contingencies, an objective standard would be employed to interpret these provisions, if necessary. Wylie had a good-faith duty to only raise reasonable objections. If it attempted to void the

contract at its whim, TAG would have legal recourse to a court which would apply an objective standard to the contract terms. Wylie could not rescind the contract at its whim and the contract is not conditional or illusory.

[¶ 25] We affirm.

[¶ 26] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., RONALD L. HILDEN, D.J., concur.

[¶ 27] RONALD L. HILDEN, D.J., sitting in place of KAPSNER, J., disqualified.