Ida S. LINDLAUF, Plaintiff and Respondent,

v.

NORTHERN FOUNDERS INSURANCE COMPANY, Defendant and Appellant.

No. 8036.

Supreme Court of North Dakota.

Aug. 3, 1964.

Rehearing Denied Sept. 10, 1964.

Duffy & Haugland, Devils Lake, for defendant and appellant.

Waldron & Kenner, Minot, for plaintiff and respondent.

BURKE, Judge.

Plaintiff brought this action to recover the avails of an insurance policy upon the

life of her deceased husband. In its answer the defendant admitted that it had issued a policy of insurance upon the life of the deceased but alleged that the policy had been issued in reliance upon false representations and warranties made by the deceased and asked that plaintiff's complaint be dismissed. Trial of the case resulted in a verdict and judgment for plaintiff. Subsequent to the entry of judgment defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial. This motion was denied in both of its phases and defendant has appealed both from the order denying his motion and from the judgment.

First for consideration is the appeal from the trial court's order denying judgment for the defendant notwithstanding the verdict. In this connection it is appellant's position that the record in the case, even when viewed in the light most favorable to the plaintiff, establishes a material misrepresentation on the part of insured, and reliance thereupon by the defendant when it issued the policy here in suit.

The specific false representations relied on by the defendant are those contained in the answers given to the medical examiner by the insured at the time he was examined for the purpose of determining his insurability. The answers given to the examining physician which are material to the issues in the case were as follows:

"Q. Have you ever been told that you had or consulted or been treated by a physician or other practitioner for any of the following:

"(c) Disease of the heart or blood vessels?

"A. No.

"(d) Pain in the chest, shortness of breath, coronary artery disease or agina pectoris?

"A. No.

"(e) Increased or abnormal blood pressure?

"A. No."

These answers were given on June 12, 1959. The insured died of myocardial infarction caused by a coronary thrombosis on October 23, 1960.

The record in the case discloses that the insured consulted his physician on January 10, 1956; that at that time he (the insured) suspected that he had coronary trouble and complained of precordial pain radiating to the left arm which became worse on exertion. His blood pressure was 210 over 140. An electrocardiogram was taken but it revealed no evidence of myocardial damage. Insured was given a prescription to relieve his high blood pressure. A week later at a second examination his blood pressure was 184 over 100, and there were no changes in his electrocardiogram. On January 27, 1956, his blood pressure was 160 over 90. In March 1956, his blood pressure was 172 over 90 and insured stated that he had no precordial pain at that time. In April 1956, insured's blood pressure was 148 over 80. In May it was 140 over 80. In August it was 160 over 84. In November it was 188 over 110. In January 1957, it was 162 over 100. In April 1957 it was 154 over 82. In August 1957 it was 130 over 80. In April 1958, it was 160 over 80. In March 1959 it was 132 over 80 and in June 1959 it was 138 over 80. While the record is not entirely clear it appears that electrocardiograms were taken on most of the occasions when the blood pressure was taken and that they revealed no evidence of heart damage. During all the time from January 1956 until June 12, 1959, the date of the insurance medical examination the insured was taking medication to relieve hypertension.

On the face of the record there can be no question but that the answers of the insured, alleged by the defendant to be false, were in fact false. It is contended that these false answers were intended to deceive the defendant and related to matters which increased the risk of loss and that therefore defendant has established a defense to this action as a matter of law.

Plaintiff seeks to avoid the effect of the false answers by a claim that the insured "promptly disclosed to them (the company's agents) at the very outset, the fact that he had high blood pressure and that said insured fully and frankly advised them of having been treated for high blood pressure." The evidence offered by plaintiff does not fully support this claim. Plaintiff's testimony is to the effect that two agents, who solicited the insurance, called at the farm home of her husband; that her husband told the agents: "I think you are wasting your time and mine because I do not think your company is interested in having me as a risk." She then related that he told them that he had had some trouble with high blood pressure in 1956, but that he did not tell them that he had had any recurrence of the high blood pressure or that he had been taking medicine constantly for three years to keep his blood pressure within normal limits, with only partial success.

There is no question but that the gentlemen to whom these statements were claimed to have been made were agents of the defendant insurer. Our applicable statute (Sec. 26-07-02 NDCC) provides that persons who solicit insurance, forward applications therefor or collect premiums therefor shall be regarded as agents of the company. Section 3-03-05 NDCC provides:

"As against a principal, both principal and agent are deemed to have notice of whatever either has notice and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

Thus, while it may be said as a generalization that notice to an agent is notice to his principal, it is clear, that in some circumstances, the question of whether notice to the agent is notice to the principal can become a question of fact. In this case, however, the trial judge considered that no question of fact upon this issue was presented by the evidence and

instructed the jury without reservation, that notice to an agent was to be imputed to the principal. We shall consider the merits of the motion for judgment notwithstanding the verdict in accordance with the instruction as given.

Two questions are thus presented. The first is: To what extent did the insurer defendant have notice that the answers given by the deceased insured upon his medical examination, were untrue? The second question is: Were the untrue answers, given by the deceased insured, with respect to matters of which the principal had no notice, material to the risk of loss, or were they given with an intent to deceive the insurer? Section 26-02-25 NDCC provides:

"No oral or written misrepresentation made in the negotiation of a contract or policy of insurance by the insured or in his behalf shall be deemed material or shall defeat or avoid the policy or prevent its attaching unless such misrepresentation shall have been made with actual intent to deceive or unless the matter misrepresented increased the risk of loss."

Under the provisions of the above statute, either a misrepresentation made with the intent to deceive or a misrepresentation material to the risk of loss, without an intent to deceive is a ground to avoid the policy. Thomas v. New York Life Ins. Co., 65 N.D. 625, 260 N.W. 605.

Upon the basis of the evidence most favorable to the plaintiff and the instructions of the trial judge, we assume that defendant at the time it received the report of the insured's physical examination, in June 1959, had prior notice that the insured had had some trouble with high blood pressure in January 1956. It also had notice from the report of the examination that insured's blood pressure was within normal limits at the time the physical examination was taken. The insurer also was falsely informed that the insured had never consulted a physician about his high blood pressure.

or been treated therefor and that he had never consulted a physician concerning pains in the chest or heart disease. Insurer was also informed that the insured had had one electrocardiogram in a routine physical examination with a normal result.

Thus, from the notice the insurer derived from its agent and from the information derived from the insured's answers to the questions put to him at the time of his medical examination, the insurer would have assumed that the high blood pressure the insured mentioned was a temporary condition which had occurred more than three years prior to the physical examination and had disappeared without any treatment. The insurer was informed that the insured had never complained of pains which were possibly symptomatic of heart disease nor consulted a physician with respect thereto. Upon the basis of the notice derived from its agent and upon the misinformation contained in the medical report the insurer, according to expert testimony, should have had no hesitancy in accepting the insured as a standard risk.

The insured's physician, who testified as plaintiff's witness, testified that he first saw the insured professionally on January 12, 1956. At that time the insured consulted him with respect to suspected coronary trouble. The insured complained of precordial pain radiating to the left arm which was worse on exertion. At that time insured's blood pressure was 210 over 140 and an electrocardiogram showed "no definite evidence of myocardial damage." The physician prescribed medicine to reduce insured's blood pressure at that time. Insured had two more examinations in January 1956, one in March, April, May, August and November 1956, and from that time until the issuance of the policy sued on in July 1959, had about four examinations a year. At most of such examinations electrocardiograms were made. None of them showed evidence of heart damage and there were no further complaints of precordial pain. During all of this time insured was taking medicine to keep his blood pressure within normal limits, but despite the medicine it fluctuated between normal and abnormal limits and on more than half the occasions it was in excess of normal limits. This witness also testified that precordial pain such as the insured described was a symptom of coronary disease, although not necessarily so, and that normal results upon electrocardiograms did not exclude the possibility of heart disease. He also stated that continued high blood pressure could damage the heart, the brain, the kidneys or the arteries, but that the presence of high blood pressure did not necessarily mean that such damage would result. It appears therefore that the insured by his misrepresentations concealed from the insurer the fact that he had had symptoms of possible heart disease and that he had chronic high blood pressure for which he had taken medication for several years.

▬▬▬ The question of the materiality of these misrepresentations was submitted to the jury and since the jury found for the plaintiff it must also have found that the misrepresentations did not relate to matters which increased the risk of loss. Unless the evidence in the case was such that the issue of the materiality of the misrepresentation was one of law for the court the jury's finding in this regard must be sustained. In Thomas v. New York Life Ins. Co., 65 N.D. 625, 260 N.W. 605, this court gave extended consideration to the question of when the issue of materiality becomes one of the law for the court. In that case the views of the court were summarized as follows:

"Where the application for an insurance policy is made the basis of the insurance contract, is attached to and made a part of the contract, and there are misrepresentations in the answers of the applicant to the questions in such application, and it appears from the record that reasonable minds could not differ on the question as to whether the matter misrepresented increased the risk of loss, such question is a question of law for the court."

Judge Taft in Penn. Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 6 Cir., 72 F. 413, 38 L.R.A. 33 stated:

" * * * A fair test of the materiality of a fact is found, therefore, in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against. The best evidence of this is to be found in the usage and practice of insurance companies in regard to raising the rates or in rejecting the risk on becoming aware of the fact. * * * "

In the instant case the application for insurance was by its terms made the basis of, and a part of the insurance contract. It was attached to the policy which was delivered to the insured. The answers made to certain questions in the application by the insured were false and concealed from the insurer the fact that the insured had had symptoms of possible heart disease and that he had been undergoing treatment for over three years for chronic high blood pressure which might damage, the heart, brain, kidneys or other organs. The undisputed testimony is that the insurer would have turned down the application or would have "rated up" the policy had it known these facts, and that such action would have been in accord with the usage and customs of insurance companies.

There is some evidence in the case that the symptoms of possible heart trouble which the insured had might have been symptoms of some insignificant ailment. There was evidence that some people with chronic high blood pressure live to a ripe old age. These considerations are not material to the issues.

■■ Insurance Companies must determine the risks they will assume upon the basis of averages actuarially determined from experience which is at least national in scope. In life insurance the risk insured against is the death of the insured. If, therefore, actuarial experience demonstrates that for individuals of a given age, those with chronic high blood pressure have a shorter life expectancy than those without such high blood pressure, then presence of chronic high blood pressure in an individual increases the risk of loss. The same conclusion must be reached with respect to individuals who have exhibited symptoms of possible heart disease.

■ The evidence in the case is to the effect that individuals with the symptoms or ailments which the insured had and which he concealed from the insurer by misrepresentation have a shorter life expectancy than individuals without such symptoms. The expert testimony to the effect individuals having such symptoms, had a shorter life expectancy than those without such symptoms, and that the usage and custom of insurance companies was to reject or "rate up" the applications of individuals having such symptoms is not testimony as to opinion but is testimony as to facts. This testimony was undisputed and in our view reasonable minds could not reject it.

Upon our review of the evidence we are satisfied that the misrepresentations made by the insured in his application for insurance related to matters which increased the risk of loss as a matter of law. It was therefore error for the trial court to deny the appellant's motion for judgment notwithstanding the verdict. The case is therefore remanded to the district court with directions to enter judgment dismissing plaintiff's cause of action but decreeing that she is entitled to return of the premiums paid to the defendant with interest thereon at the legal rate.

MORRIS, C. J., and TEIGEN, J., concur.

STRUTZ, J., did not participate.

ERICKSTAD, J. not being a member of the Court at the time of submission of this case did not participate.