The **INDUSTRIAL COMMISSION OF NORTH DAKOTA, acting in its capacity as the North Dakota Housing Finance Agency, Plaintiff,**

v.

**McKENZIE COUNTY NATIONAL BANK, a North Dakota Banking Corporation, Defendant, Third–Party Plaintiff and Appellee,**

v.

**WISCONSIN MORTGAGE ASSURANCE CORPORATION and Mortgage Guaranty Insurance Corporation, foreign corporations, Third–Party Defendants and Appellants.**

**Civ. No. 930370.**

Supreme Court of North Dakota.

June 15, 1994.

Dennis Edward Johnson, of Johnson Law Office, Watford City, for defendant, third-party plaintiff, and appellee.

Eugene F. Buresh, of Reichert, Buresh, Herauf & Ficek, PC, Dickinson, for third-party defendants and appellants.

VANDE WALLE, Chief Justice.

Wisconsin Mortgage Assurance Corporation (WMAC), previously named Mortgage Guaranty Insurance Corporation (MGIC), appealed from a summary judgment awarding McKenzie County National Bank (the Bank) damages on a mortgage insurance policy. The court also awarded the Bank attorney fees. We affirm the summary judgment in favor of the Bank, but we reverse the award of attorney fees.

▮ The purpose of summary judgment is to expeditiously dispose of a legal conflict on its merits when there is no material fact dispute or if only a question of law is involved. *First Interstate Bank v. Rebarchek*, 511 N.W.2d 235 (N.D.1994). The material facts in this case are undisputed. In September 1984 Kenneth and Patricia Leiseth applied for a loan with the Bank to build a house in rural McKenzie County on property then owned by Kenneth's parents. The house was to be financed under the first-time home buyers program operated by the North Dakota Housing Finance Agency (NDHFA). This program required mortgage insurance, which the Bank applied for with MGIC, a Wisconsin corporation. The Bank submitted an appraisal of the property with the insurance application, which indicated that the home would be built on a four-acre parcel. The Bank did not mention access problems in the application.

The actual parcel of land deeded to Kenneth and Patricia for construction of the home consisted of seven-tenths of one acre. That parcel is not adjacent to any public roadway, and there is no recorded easement for access between the property and the public roadway.

Upon reviewing the insurance application, MGIC provided both pool and primary mortgage insurance. The Leiseths subsequently defaulted on their loan, and the Bank, with MGIC's permission, commenced a foreclosure action. A deficiency remained following foreclosure of the mortgage and the sheriff's sale of the property. MGIC, who by then had taken the WMAC name, initially paid NDHFA $19,036 under the primary insurance coverage. However, after reviewing the foreclosure documents and the original insurance application, WMAC refused to further reimburse NDHFA or the Bank under the policy, alleging that the insurance application contained material false information warranting rescission of the policy under Chapter 26.1–29, N.D.C.C.

NDHFA sued the Bank to recover the deficiency. The Bank filed a declaratory judgment action in June 1989 to determine legal rights and responsibilities under the insurance policy. WMAC counterclaimed against the Bank for repayment of sums already paid under the primary insurance coverage. These actions were joined for trial, and the parties subsequently filed joint motions for summary judgment. The trial court determined, as a matter of law, that the insurance contract was fully enforceable and that grounds for rescission did not exist. The court also concluded that WMAC's reasons for rescinding the insurance policy were frivolous. The court issued a summary judgment awarding the Bank damages under the insurance policy and attorney fees for litigating the coverage issue. WMAC appealed.

▮ WMAC asserts on appeal that the trial court erred in refusing its motion for abstention or abatement of the case in favor of court proceedings in Wisconsin. The Wisconsin Insurance Commissioner, by letter dated March 18, 1985, notified all MGIC policyholders that, effective February 28,

1985, the business and certain assets of MGIC were acquired by a newly created insurance company ("New MGIC") which took MGIC's name. The policyholders were informed that to accomplish the name transfer, "old MGIC" had changed its name to "Wisconsin Mortgage Assurance Corporation." The policyholders were also informed that proceedings placing WMAC under court supervision to allow for orderly payments of MGIC's insurance obligations were "not due to any financial insolvency of WMAC." The Commissioner assured the policyholders there would be no change in handling their insurance contracts:

"New MGIC has entered into a management agreement with the reinsurers to manage the reinsured business, which assures that *handling of claims, premium collection and other customer services will not change in any way.*" (Emphasis in original)

On April 24, 1985, the Dane County Circuit Court of Wisconsin issued an order declaring all actions and proceedings against WMAC "abated, and plaintiffs in such actions are directed to file their claims herein pursuant to Wis.Stat. § 645.61." WMAC's argument is that the trial court should have deferred to this 1985 Wisconsin court order by abating the Bank's 1989 action, thereby forcing the Bank to bring proceedings in Wisconsin. WMAC asserts that principles of "comity" and "full faith and credit" support abatement of the North Dakota proceedings in recognition of the Wisconsin court's 1985 abatement order. We disagree.

This dispute involves an insurance policy issued in North Dakota between companies doing business in North Dakota and involving property located in North Dakota. The 1985 Wisconsin court order did not expressly prohibit future actions or proceedings against WMAC; it only abated those in existence at the time the order was issued on April 24, 1985. There is no need for deference where the proceedings in one court seek no more than a declaration of rights to property being administered by another. *Law Enforcement Ins. Co., Ltd. v. Corcoran,* 807 F.2d 38, 42 (2nd Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503

(1987). Furthermore, a foreign decree cannot, of its own accord, affect title to real property in North Dakota. *American Standard Life & Accident v. Speros,* 494 N.W.2d 599 (N.D.1993); *Wacker Oil, Inc. v. Lone-Tree Energy, Inc.,* 459 N.W.2d 381 (N.D. 1990); *Rozan v. Rozan,* 129 N.W.2d 694 (N.D.1964).

The trial court analyzed its reasons for refusing WMAC's request to abate this litigation as follows:

"Wisconsin Mortgage Assurance Corporation is authorized to do business in the State of North Dakota, and the State Insurance Commissioner is by law, an agent for process in connection with any actions or proceedings against it in North Dakota.

"This is also the appropriate state for litigating the issues raised in this lawsuit. The insured, McKenzie County National Bank, is located in this state. The insured property, the old Leiseth house is located in this state. The factual disputes between the parties, if there are any, would involve witnesses in matters that took place in this state. All the witnesses will be from North Dakota. There are no contacts within Wisconsin that would justify trying the action in that state."

We agree with the analysis, and we conclude that the trial court did not err in refusing to stay or abate this litigation.

Under Section 26.1–29–25, N.D.C.C., a misrepresentation in an insurance application is a ground for rescinding or avoiding an insurance policy if the misrepresentation is made with an actual intent to deceive or if it increases the risk of loss. *See Lindlauf v. Northern Founders Ins. Co.,* 130 N.W.2d 86 (N.D.1964) [involving similar predecessor statute]. The Bank admits that erroneous information was provided in the insurance application. The application said that the parcel of land upon which Leiseths' home would be built was four acres, when, in fact, the parcel was only seven-tenths of an acre. Also, the application omitted any reference to the property not being located adjacent to a public roadway or to the nonexistence of any recorded easement for access to the property.

WMAC does not claim that the Bank had an actual intent to deceive in supplying the erroneous information. WMAC admits that the misrepresentation regarding parcel size was "not significant." Appraisals of the property show no significant difference in the value of Leiseths' rural home whether it was placed on four acres or a seven-tenth acre parcel.

The insurance policy required good and marketable title on the mortgaged property. WMAC's argument for rescission is that its risk of loss was increased because the failure to have a recorded easement for access to the property rendered the title unmarketable. WMAC's argument gives too little regard to the rule that a conveyance of realty separated from a roadway by other realty of the grantor results, by implication of the law, in a way of necessity across the grantor's property to the roadway. *City of Bismarck v. Casey,* 77 N.D. 295, 43 N.W.2d 372 (1950). *See also Schatz v. Schatz,* 419 N.W.2d 903 (N.D.1988). This implied right of way for ingress and egress is a well-settled common law principle. *See* 3 *Powell on Real Property* ¶ 410 (1993); William B. Johnson, Annot., *Locating Easement of Way Created by Necessity,* 36 A.L.R.4th 769 (1985); *Bode v. Bode,* 494 N.W.2d 301, 303 (Minn.Ct.App.1992).

WMAC relies on the decision in *Myerberg, Sawyer & Rue, P.A. v. Agee,* 51 Md.App. 711, 446 A.2d 69 (1982), to support its contention that title is rendered unmarketable when there is no recorded right of ingress and egress between a property and a public roadway. The Maryland Court of Special Appeals in *Myerberg* concluded that title is not marketable "[i]f there is a reasonable probability that the purchaser may be subjected to the hazard of litigation to defend his title. . . ." *Myerberg, supra,* 446 A.2d at 72. However, the facts in *Myerberg* are clearly distinguishable from the facts in this case. In *Myerberg* the landlocked parcel did not result from the partial conveyance of a grantor's property, and access to the parcel was obtained only by litigation against an adjoining neighbor to establish an easement by necessity over that landowner's property. Prior to its conveyance, the property in *Myerberg* was wholly unimproved and there was no established route for ingress or egress to the property. Here, the deeded parcel was severed from the grantor's property, automatically creating, by operation of law, a right of ingress and egress over the grantor's land. Furthermore, a well established and maintained roadway has existed for many years between the public road and the site where the Leiseth house is located. So, even though a recorded right of way does not exist, there has never been any dispute about the existence of an actual right of way to the property or the location of that right of way. A threat of litigation alone can render a title unmarketable if the litigation danger is "apparent and real, not merely imaginary or illusory." *Green v. Sams,* 209 Ga.App. 491, 433 S.E.2d 678, 683 (1993). WMAC's claim that the absence of a recorded right of way placed a cloud on the title of this property is, in our view, merely illusory, when juxtaposed with the undisputed existence of an established right of way coupled with the automatic right of ingress and egress granted by the law.

A marketable title is one that is free from reasonable doubt. *Coverston v. Egeland,* 69 N.W.2d 790 (N.D.1955). We believe that reasonable persons could not differ that access to this property is free of reasonable doubt. When reasonable minds cannot differ about whether a misrepresentation has increased the risk of loss, the issue is a question of law for the court to decide. *Lindlauf, supra,* 130 N.W.2d at 87. Under the circumstances of this case, we conclude, as a matter of law, that the absence of a recorded easement for ingress and egress to the property did not place a cloud on the property title or increase WMAC's risk of loss. Consequently, the trial court did not err in concluding that WMAC was not entitled to rescind its contract of insurance, and we affirm that part of the judgment.

WMAC asserts that the trial court erred in awarding attorney fees to the Bank. We agree. Under Section 28–26–01(2), N.D.C.C., the trial court can award attorney fees if a claim for relief is frivolous. A claim is frivolous only when there is a complete absence of actual facts or law so that a reasonable person could not have expected that a court would render a judgment in that person's favor. *Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73 (N.D.

1991). Affirmance of a summary judgment on appeal does not necessarily mean that a claim is frivolous. *Larson v. Baer,* 418 N.W.2d 282 (N.D.1988). The Bank conceded that erroneous information was given in the insurance application. From that circumstance arose a reasonable question, not a frivolous one, whether the erroneous information affected marketable title and increased WMAC's risk of loss. WMAC's argument that it did was not so lacking in fact or law that a judgment in its favor was beyond expectation by a reasonable person. A trial court's award of attorney fees will be disturbed on appeal only for an abuse of discretion. *Peterson v. Zerr,* 477 N.W.2d 230 (N.D.1991). We conclude that the trial court abused its discretion in awarding attorney fees to the Bank, and we reverse that part of the judgment.

We affirm that part of the judgment holding WMAC was not entitled to rescind its contract of insurance, and we reverse that part of the judgment awarding attorney fees to the Bank.

SANDSTROM and NEUMANN, JJ. concur.

LEVINE and MESCHKE, JJ., concur in the result.