1999 ND 172

Terrence W. NYGAARD, Trustee of The Terrence W. Nygaard Trust, dated July 10, 1987, Plaintiff, Appellant, and Cross–Appellee

v.

CONTINENTAL RESOURCES, INC. and Diamond Resources, Inc., Defendants, Appellees, and Cross–Appellants

No. 990010.

Supreme Court of North Dakota.

Aug. 25, 1999.

Albert J. Hardy, Dickinson, for plaintiff, appellant, and cross-appellee. Submitted on briefs.

Lawrence Bender, Pearce & Durick, Bismarck, for defendants, appellees, and cross-appellants. Submitted on briefs.

NEUMANN, Justice.

[¶ 1] Terrence W. Nygaard, Trustee of the Terrence W. Nygaard Trust ("Nygaard"), appealed from a judgment declaring an oil and gas lease held by Continental Resources, Inc. ("Continental"), is valid. Continental and Diamond Resources, Inc. ("Diamond"), cross-appealed from the denial of their claim for attorney fees. We conclude Diamond's tender of a sight draft extended the lease, and Nygaard's claim was not frivolous. We affirm.

[¶ 2] On January 4, 1995, Nygaard executed an oil and gas lease to Diamond for three years. Diamond paid the bonus consideration with a thirty-day sight draft. The lease contained an extension option:

Lessee has the right and option to extend this lease for an additional two years beyon[d] 1–4–95[sic] by remitting to the lessor on or before 1–4–95[sic],[1] an amount equal to $10.00 per net mineral acre owned by lessor, per year, in and under such lands as lessee elects to exercise under its option.

On June 28, 1995, Diamond assigned its interest in the lease to Continental.

[¶ 3] On December 12, 1997, Diamond, on behalf of Continental, attempted to exercise the extension option by tendering a five-day sight draft for $5,591.40. Nygaard acknowledged receipt of the sight draft on December 15, 1997. In telephone conversations, Nygaard said the option re-quired payment on or before January 4, 1995, and said he would forward the sight draft and Diamond's letter to his attorney for review. On December 23, 1997, Continental wrote Nygaard: "By previous tender of payment to you in the amount of $5,591.40, Continental has validly exercised that right and deems the primary term of the above-referenced oil and gas lease extended until January 5, 2000." On December 27, 1997, Nygaard wrote Continental: "I understand your position on the lease extension. Mr. Hardy will be representing me as we try to reach an agreement on the value of the lease and the time period covered."

[¶ 4] On January 8, 1998, Nygaard's attorney wrote Continental and Diamond:

Demand is herewith made upon you to immediately place of record a release of the oil and gas lease dated January 4, 1995. . . . The term of the lease has expired as you have failed to exercise the option to extend the lease in accordance with the terms of the option which require the remitting to the Trustee on or before January 4, 1995 (98??) an amount equal to $10.00 per net mineral acre owned by the lessor.

The substituted offer of a sight draft in lieu of payment of $10.00 per net mineral acre as required by the terms of the option is unacceptable to the Trustee. The sight draft is unacceptable as it does not represent payment.

Accordingly, this letter shall serve as formal rejection of your purported counteroffer of substituting the sight draft.

Continental recorded an affidavit asserting its lease was in full force and effect. Nygaard sued Continental and Diamond to quiet title, alleging, in part:

Contrary to the express terms and conditions of the option, Defendants did not tender to the Plaintiff an amount equal to $10.00 per net mineral acre owned by Lessor all as required by the

---

1. The parties do not now dispute the intended deadline for extending the lease was January 4, 1998, not 1995.

terms of the option to extend the lease. Instead of payment of said sum Diamond directed by mail to the Plaintiff a site [sic] draft drawn upon the American State Bank which site [sic] draft provides in part that it is not a cash item but is a 5 day site [sic] draft, with the privilege of redraft, subject to approval of title and void at the option of Diamond Resources, if not presented within 30 days from the date of its issue. A copy of said site [sic] draft is attached hereto as "Exhibit 2".

[¶ 5] All parties moved for summary judgment. Relying on *Restatement (Second) of Contracts* § 249 (1981) and N.D.C.C. § 41–02–59, the trial court concluded:

> Diamond's tender of the sight draft as payment to Plaintiff to [extend] the Subject Lease constituted payment within the meaning of the terms of the Option Agreement contained in the Subject Lease because sight drafts are ordinarily used for the payment of obligations in oil and gas leases; and, because Plaintiff did not object to the sight draft tendered by Diamond and demand payment by some other method until after the time period for exercising the option had expired.

The trial court denied Nygaard's motion for summary judgment, and granted the motion for summary judgment made by Continental and Diamond. The trial court denied the request by Continental and Diamond for attorney fees under N.D.C.C. § 28–26–01. A judgment was entered determining "the oil and gas lease held by Continental . . . is valid, subsisting and in full force and effect against all claims by [Nygaard] that the same has expired for failure of the lessee to make payment to exercise the option to extend the same for an additional two years after January 4, 1998."

[¶ 6] Nygaard appealed, contending tender of a sight draft, rather than cash, was ineffective to exercise the option to extend the lease. Continental and Diamond cross-appealed the trial court's denial of their claim for attorney fees.

[¶ 7] Summary judgment is a procedural device for promptly and expeditiously disposing of a controversy without a trial if there is no genuine issue of material fact, or if the law is such that resolution of factual disputes will not alter the result. *Strom–Sell v. Council for Concerned Citizens, Inc.*, 597 N.W.2d 414, 1999 ND 132, ¶ 16. Resolution of this case did not turn on the resolution of factual disputes, but on the legal effect of Diamond's tender of a sight draft and Nygaard's response to the tender.

[¶ 8] *Restatement (Second) of Contracts* § 249 (1981) allows payment of claims by means other than legal tender:

> Where the payment or offer of payment of money is made a condition of an obligor's duty, payment or offer of payment in any manner current in the ordinary course of business satisfies the requirement unless the obligee demands payment in legal tender and gives any extension of time reasonably necessary to procure it.

The Comment to § 249 states, in part:

> [M]oney claims are so generally paid by means other than legal tender that, absent a specific demand, the debtor is not likely to suppose that an insistence on legal tender is the reason behind a refusal to accept payment or offer to pay by check or in some other manner current in the ordinary course of business. Moreover, if the debtor is informed that this is the reason for rejection, he can ordinarily obtain legal tender and cure his defective performance or offer of performance, at least if he is given a reasonable extension of time. This Section, therefore, states an exceptional rule applicable to such cases.

[¶ 9] Section 249 provides an appropriate way of construing offers of payment required by contracts, which, like the one involved here, do not "explicitly require[ ] payment in legal tender," *Restatement*

*(Second) of Contracts* § 249 cmt. a (1981). For transactions ,in goods, our legislature has adopted a similar measure in N.D.C.C. § 41–02–59(2) (U.C.C. § 2–511(2)):

> Tender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender and gives any extension of time reasonably necessary to procure it.

The official comment to U.C.C. § 2–511(2) says "[t]he essence of the principle involved in subsection (2) is avoidance of commercial surprise at the time of performance." 1A, *U.L.A.* 792 (1989). *See also TBS Exco, Inc. v. E.N. Smith, III Energy Corp.*, 818 S.W.2d 417 (Tex.App.1991) (adopting *Restatement (Second) of Contracts* § 249 (1981) and holding timely delivery of checks constituted payment to extend oil and gas leases when the landowners did not demand payment in cash and extend time for compliance).

[■■■10] In court briefs, Nygaard "acknowledge[s] that sight drafts are commonly used in the oil and gas leasing business in North Dakota." Thus it is uncontested in this case that payment or offer of payment with a sight draft is a manner current in the ordinary course of business in the oil and gas leasing business in North Dakota. It therefore follows that such a tender satisfies the requirement for payment unless the obligee demands payment in legal tender and gives any extension of time reasonably necessary to procure it.

[¶ 11] Nygaard contends it "timely and effectively objected to the sight draft as a medium of payment, and Continental failed to exercise the option by tendering substitute payment." Nygaard argues:

> Under the circumstances created by Continental in the use of a sight draft, Nygaard's objection to the sight draft was timely and effective.

The deadline for Continental to exercise the option to extend the lease expired on January 4, 1998. The notice rejecting the tender of the sight draft was dated January 8, 1998. Any argument of Continental that the objection to tender was made after the time to exercise the option had expired is without merit. Continental chose to use a sight draft. Continental was aware of the fact that Nygaard lived in Kansas and that there would be normal delays in the use of the mail, both to Nygaard and to his attorney in North Dakota. Additionally, the intervening extended holidays of Christmas and New Years contributed to further reasonable time delays in Nygaard's objecting to the use of a sight draft by Continental.

[3] [■12] Continental tendered a sight draft on December 12, 1997. To extend the lease, payment was due by January 4, 1998. Nygaard rejected tender of the sight draft on January 8, 1998. Nygaard does not assert that in any of the letters and telephone conversations between December 12, 1997, and January 8, 1998, it advised Continental it wanted legal tender and would extend a reasonable time for Continental to procure it. We conclude, on these facts, as a matter of law, Nygaard's post-deadline notice of rejection was untimely and ineffective.

[4] [■13] Nygaard contends "the lease agreement requires payment in cash or alternatively unconditional payment and not a sight draft," although "the option paragraph in Exhibit A to the lease does not expressly use the word 'cash'." Nygaard relies on two phrases in the lease—"in consideration of *ten and more ($10.00 +)* DOLLARS cash in hand paid," and "[i]n consideration of the down cash payment"—and argues: "As cash is specified in other provisions of the lease, payment of the 'amount equal to $10.00 per net mineral acre' should have been in cash." The lease phrases merely recite that cash was received; they do not specify cash was required. The option language to extend the lease for an additional two years "by remitting to the lessor ... an amount equal to $10.00 per net mineral acre" specifies the amount of payment re-

quired, not the method of payment. Nothing in the underlying lease or the option explicitly requires payment in cash or otherwise explicitly requires payment in legal tender.

[¶ 14] We conclude Diamond's tender of a sight draft extended the lease. We, therefore, conclude the trial court properly denied Nygaard's motion for summary judgment, and properly granted the motion of Continental and Diamond for summary judgment, and we conclude judgment was properly entered holding Continental's lease was valid and effective.

[¶ 15] Continental and Diamond cross-appealed, contending the trial court abused its discretion in denying their claim for attorney fees under N.D.C.C. § 28–26–01(2), which provides:

> In civil actions the court shall, upon a finding that a claim for relief was frivolous, award reasonable actual and statutory costs, including reasonable attorney's fees to the prevailing party. Such costs must be awarded regardless of the good faith of the attorney or party making the claim for relief if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in their favor, providing the prevailing party has in responsive pleading alleged the frivolous nature of the claim. This subsection does not require the award of costs or fees against an attorney or party advancing a claim unwarranted under existing law, if it is supported by a good faith argument for an extension, modification, or reversal of the existing law.

[¶ 16] "Under Section 28–26–01(2), N.D.C.C., the trial court can award attorney fees if a claim for relief is frivolous." *Industrial Comm'n v. McKenzie County Nat'l Bank*, 518 N.W.2d 174, 178 (N.D.1994). A claim is frivolous only if there is such a complete absence of actual facts or law a reasonable person could not have expected a court would render a judgment in that person's favor. *Id.* "An award of attorney's fees under Section 28–26–01(2) lies within the sound discretion of the trial court, and its determination will be disturbed on appeal only for an abuse of that discretion." *Peterson v. Zerr*, 477 N.W.2d 230, 236 (N.D.1991). The trial court determined the "case contains legitimate issues which Plaintiff was entitled and perhaps justified in bringing to a judicial conclusion," and denied the request for attorney fees. From our review of the record, we conclude the trial court did not abuse its discretion in denying the request for attorney fees.

[¶ 17] Affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.