## H. M. ORFIELD, formerly H. M. Olson, v. J. K. HARNEY.

### (157 N. W. 124.)

**Prior written contract — changes — by correspondence — agreement — contract and correspondence — construed from.**

1. Where parties by correspondence agree to certain changes in the terms of a prior written contract, the agreement between the parties will be gathered from the written contract and the correspondence considered as a whole.

**Agreement — breach of — real estate transfer of — pecuniary compensation — specific performance.**

2. It is presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation, and ordinarily a court of equity will enforce specific performance thereof.

**Equity — court of — specific performance — jurisdiction — may retain — decree — enforcement.**

3. A court of equity may retain jurisdiction of an action in specific performance and enforce compliance with its decree.

**Findings — evidence — sufficient to support — real property — owner — able to convey.**

4. Evidence considered and *held* sufficient to justify a finding that defendant was the owner of, and able to convey, real property.

**Vendee — specific performance — contract — awarded — damages — vendor — conveyance — delay.**

5. The vendee may be awarded specific performance of a contract to transfer real property, and damages against the vendor for delay in conveying, in the same action.

**Complaint — allegations — damages — award of.**

6. Ordinarily damages cannot be awarded in an amount exceeding that alleged and demanded in the complaint.

Opinion filed March 8, 1916.

From a judgment of the District Court of Benson County, *Buttz*, J. Defendant appeals.

Affirmed as modified.

*T. H. Burke,* for appellant.

A breach of a contract consists of "the violation or nonfulfilment of an obligation, contract, or duty."

"The Commission of some act or the omission of an act specified or implied in the contract." Black's Law Dict.; People ex rel. Johnson v. New York Produce Exch. 8 Misc. 552, 29 N. Y. Supp. 307; James v. Adams, 16 W. Va. 267; Davis v. Bronson, 2 N. D. 300, 16 L.R.A. 655, 33 Am. St. Rep. 783, 50 N. W. 836.

Where a contract is not breached before the commencement of the action, it is improperly brought. Davis v. Bronson, supra; Ward v. American Health Food Co. 119 Wis. 12, 96 N. W. 388, and authorities cited.

A party to an executory contract may stop performance by an explicit order and will subject himself to such damages as will compensate the other party for being deprived of its benefits. Davis v. Bronson, 2 N. D. 300, 16 L.R.A. 655, 33 Am. St. Rep. 783, 50 N. W. 836.

If an action for damages for the refusal on the part of the vendee to accept goods as agreed, the measure of damages is the difference between the market value of the goods at time of breach and the price the vendee agreed to pay. T. B. Scott Lumber Co. v. Hafner-Lothman Mfg. Co. 91 Wis. 667, 65 N. W. 513; 13 Cyc. 168; Talbot v. Boyd, 11 N. D. 81, 88 N. W. 1026; Pratt v. S. Freeman & Sons Mfg. Co. 115 Wis. 648, 92 N. W. 368; Kelley v. La Crosse Carriage Co. 120 Wis. 84, 102 Am. St. Rep. 971, 97 N. W. 674; Anderson v. Savoy, 137 Wis. 44, 118 N. W. 217; Pollen v. Le Roy, 30 N. Y. 549; Brownlee v. Bolton, 44 Mich. 218, 6 N. W. 657; Cohen v. Platt, 69 N. Y. 348.

The court erred upon the question of the failure to accept the personal property here involved, and also as to the matter of damages. Comp. Laws 1913, § 6573; Hayes v. Cooley, 13 N. D. 204, 100 N. W. 250; Malueg v. Hatten Lumber Co. 140 Wis. 381, 122 N. W. 1057.

This is an executory contract. Since the defendant never made the selection of the goods necessary to accept them, he in no way assumed ownership. The plaintiff kept the goods and paid all assessments against them. T. B. Scott Lumber Co. v. Hafner-Lothman Mfg. Co. 91 Wis. 667, 65 N. W. 513; Todd v. Gamble, 148 N. Y. 382, 52 L.R.A. 225, 42 N. E. 982; Allen v. Jarvis, 20 Conn. 38; Stanford v. McGill, 6 N. D. 573, 38 L.R.A. 760, 72 N. W. 938; Reeves & Co. v. Bruening, 13 N. D. 166, 100 N. W. 241; Minneapolis Threshing Mach. Co.

v. McDonald, 10 N. D. 408, 87 N. W. 993; Talbot v. Boyd, 11 N. D. 81, 88 N. W. 1026.

There was an actual loss due to Olson's failure to place the goods upon the market and have them sold. Pratt v. S. Freeman & Sons Mfg. Co. 116 Wis. 648, 92 N. W. 368; Cohen v. Platt, 69 N. Y. 348, 25 Am. Rep. 203.

When a vendee refuses to accept goods for which he has bargained, the vendor has the option to elect as to one of three remedies,—treat the property as the vendee's and sue for contract price; sell the property on notice, at market price, and sue for any difference, or he may regard the contract as forfeited, and retain the property as his own, and sue vendee for damages for nonperformance, in which case the damages are limited to the difference between contract price and market value. Cohen v. Platt, supra; Mason v. Decker, 72 N. Y. 595, 28 Am. Rep. 190; Bigelow v. Legg, 102 N. Y. 652, 6 N. E. 107.

The election as to the form of the remedy pursued in this action is binding upon the vendor, and, once secured, is conclusive. Moller v. Tuska, 87 N. Y. 169; Hadley v. Baxendale, L. R. Exch. 341, 2 C. L. R. 517, 23 L. J. Exch. N. S. 179, 18 Jur. 358, 2 Week. Rep. 302, 5 Eng. Rul. Cas. 502; Guetzkow Bros. Co. v. A. H. Andrews & Co. 92 Wis. 214, 52 L.R.A. 209, 53 Am. St. Rep. 909, 66 N. W. 119; Hayes v. Cooley, 13 N. D. 204, 100 N. W. 250.

If he by his negligence or wilfulness allows the damages to be enhanced, the increased loss which was avoidable by the performance of his duty falls upon him. Sutherland, Damages, 3d ed. § 88, and authorities cited.

Market price or value is determined as at the point where delivery was to be made. Guillon v. Earnshaw, 169 Pa. 463, 32 Atl. 545; Thurman v. Wilson, 7 Ill. App. 312.

The seller is not permitted to recover the entire value of the goods, under such circumstances as here presented, but the loss that he has actually sustained by reason of the breach. 21 Am. & Eng. Enc. Law, 578; Dreyfuss v. Foster, 3 N. Y. Supp. 54.

*L. O. Rue* and *Victor Wardrope,* for respondent.

Letters may constitute a contract for the sale or exchange of real estate upon which specific performance may be decreed. Mitchell v.

Knudtson Land Co. 19 N. D. 737, 124 N. W. 946; Foster v. Furlong, 8 N. D. 282, 78 N. W. 986.

A court of equity, having once gained jurisdiction, may retain the same to enable it to enforce its orders, or compel observance thereof; if defendant had placed himself in position so that he could not perform, then the court could enforce judgment for damages. Mitchell v. Knudtson Land Co. supra.

The plaintiff, in an action for specific performance, may recover damages for withholding possession, and delay in conveying when performance is decreed. Beddow v. Flage, 22 N. D. 53, 132 N. W. 637; Pillsbury v. J. P. Streeter, Jr. Co. 15 N. D. 174, 107 N. W. 40.

CHRISTIANSON, J. This is an action to compel the specific performance of a contract for the exchange of a tract of land for a certain stock of merchandise, and to recover damages sustained by the plaintiff by reason of defendant's refusal to comply with the terms of such contract. The trial court made findings and conclusions in favor of the plaintiff, and defendant has appealed from the judgment entered thereon, and demanded a trial de novo in this court.

There is no serious dispute with respect to the transaction out of which this litigation grew. The plaintiff was the owner of a stock of goods in Minneapolis. The defendant inspected this stock and examined the invoices showing the invoice prices of the several articles contained therein, and after such inspection, on July 24, 1912, entered into the following written contract with the plaintiff:

This agreement made this 24th day of July, 1912, by and between J. K. Harney of Brinsmade, county of Benson, state of North Dakota, party of the first part, and H. M. Olson, of Minneapolis, county of Hennepin, state of Minnesota, party of the second part.

Witnesseth, That the said party of the first part, in consideration of the covenants and agreements hereinafter mentioned, on the part of the party of the second part, to be kept, done, and performed, does hereby agree to sell and convey by general warranty deed free from any encumbrance, except a mortgage of sixteen hundred ($1,600) dollars, and interest from February 4, 1912, at 7 per cent, unto the said party of the second part, his heirs or assigns, all the following described

land situated in Todd county, Minnesota, to wit: The southeast quarter, (S. E. ¼) of sec. 26, township 133, range 34, containing 160 acres more or less according to government survey, said land being taken at the agreed price of thirty-five ($35) dollars per acre, leaving an equity after deducting interest from February 4, 1912, to August 4, 1912, of three thousand nine hundred and forty-four dollars ($3,944).

In consideration of which the party of the second part agrees to sell and convey by bill of sale free from any encumbrance f. o. b. cars at Minneapolis, Minnesota, to the party of the first part, his heirs or assigns, the following described stock of goods, situated in Hennepin county, Minnesota, to wit: Part of that certain stock of merchandise consisting principally of ladies' clothing, men's and boys' suits, shoes, and rubbers and other goods, situated on the second floor at No. 2304 Twenty-fifth ave. So., Minneapolis, same being inspected by said first party, to the amount of thirty-nine hundred and forty-four ($3,944) dollars to cover equity in said land as above, same to be selected by said second party from the $4,245 stock.

It is agreed that said second party or his agent may view property of first party above mentioned, and if found to be otherwise than as represented, or as understood by said second party, this agreement to be null and void, otherwise to be binding upon both parties.

It is agreed that an abstract of title brought down to date, to the above land, shall be furnished by the first party hereto, and should there be any defect in the title of either, the party whose title is defective hereby agrees that the said defect or defects shall be made good and the title perfected within sixty days from date hereof at his own cost and expense.

It is agreed that all papers shall be executed and delivered at the expense of the prospective parties, on or before the 4th day of August, A. D. 1912.

In testimony whereof, both parties have hereunto set their hands and seals the day and year first above written.

J. K. Harney    (Seal)
H. M. Olson    (Seal)

Signed, sealed, and delivered in presence of

Ruth Ryberg,
William W. Powers.

On July 27, 1912, the plaintiff wrote defendant as follows:

July 27, 1912.

Mr. J. K. Harney,
      Brinsmade, N. Dak.
Dear Sir:—

My brother has just returned from Todd county, where he inspected your 160 acres tract, and, I regret to say, found it of such a nature that we could not deal as proposed. He measured the two patches of field and found a total of only twenty-nine (29) acres, whereas I understood it to be 70 acres cultivated. You evidently meant including the open meadow. Well, the meadow is largely wire-grass. Well, there is no use of saying unkind things about the land. It has many advantages too, but everybody spoke of it being worth from twenty to thirty dollars per acre. I would be willing to give you the benefit of the highest quotation and allow you thirty dollars ($30), this giving you thirty-one hundred and forty-four dollars ($3,144) worth of stock otherwise on basis of contract signed, stock delivered f. o. b. at Minneapolis. . . . This is positively the very best I can do. Please notify me at once whether accepted or not.

Yours truly,
(Signed)     H. M. Olson.

To this letter, defendant replied as follows:

August 10, 1912.

Mr. H. M. Olson,
      Minneapolis, Minn.
Dear Sir:—

With regret, but as I remember right, I told you there was 70 acres of plow land on said farm, and I really believe yet it is there. I am afraid your brother did not see the south field at all, but *nevertheless, if you will change the reading of the agreement* and let me pick $3,144 worth of goods from the stock *as the contract reads,* I will make ready to close the deal, as I am in a position to handle the goods, and will get them out of your way shortly. I had a letter from Mrs. J. J. Blake, asking me some questions about the stock. The land is the north half

and southwest quarter of southwest quarter, sec. 4, township 153, and range 71.

Yours truly,

(Signed)          J. K. Harney.

On August 12, 1912, plaintiff wrote defendant a letter wherein he unqualifiedly accepted the offer contained in defendant's letter of August 10, 1912. Certain correspondence followed, some of which is not material. But on August 8, 1912, defendant wrote plaintiff in part as follows: "I am looking after abstract, and as you know we are in the harvest field. It may be a little tardy, but not very late,—I will write again." On September 16, 1912, plaintiff wrote defendant a letter insisting that the transfer be completed. To this letter defendant replied as follows:

Brinsmade, N. D., Sep. 23, 1912.

Mr. H. M. Olson,

     Mpls, Minn.

Dear Sir:—

I plainly see that you are getting rather anxious. I have been so busy I could not think of getting away. I will be in or send a man in within the next two weeks, so just rest easily. Abstract will be up to date.

Yours resp.

J. K. Harney.

In subsequent correspondence and telephone conversations, plaintiff repeatedly insisted that the transaction be completed, offered performance on his part, and demanded the same from defendant, but the defendant failed to comply with the agreement, and finally in the latter part of December, 1912, flatly refused to do so, whereupon plaintiff brought this action.

In his complaint, plaintiff sets forth two causes of action. The first cause is for the specific performance of the contract of exchange. The second cause of action consists of a reaverment of all the allegations contained in the first cause and additional averments to the effect "that because of defendant's failure, neglect, and refusal to make his selec-

tion from said stock of goods, this plaintiff has been obliged to keep said stock intact and in storage . . . and that the costs and expenses of said storage is due solely to said failure, neglect, and refusal on the part of said defendant to make his selection of said stock and to receive the said stock from the plaintiff. . . . That there is now due and owing from defendant to the plaintiff on such storage the sum of $65." The relief prayed for in the complaint is that plaintiff be required to specifically perform his part of the contract, and, in case of his inability or refusal to do so, that plaintiff have judgment for the reasonable value of the land, less the existing encumbrances against the same; and that plaintiff have judgment upon the second cause of action in the sum of $65, with interest. The answer admits that defendant is a resident of Benson county, North Dakota; and *that defendant on or about July 24, 1912, represented to plaintiff that he was the owner of the tract of land in question* and offered to exchange the same for plaintiff's stock of goods; that defendant inspected the said stock of goods and examined the invoices showing the invoice price of the several articles contained in said stock, and that after such inspection, the plaintiff and defendant entered into the written contract hereinabove set forth. Aside from such and other admissions, the answer is in effect a general denial.

On the first cause of action the court entered judgment requiring the defendant to specifically perform the contract by selecting goods from the stock to the amount of $3,144 according to invoice prices, and by executing and delivering to plaintiff a warranty deed to the 160 acre tract of land in Todd county, Minnesota, in accordance with the terms of the contract, within twenty days from the date of the entry of judgment; and the judgment further provided that if defendant fails, neglects, or refuses to execute and deliver said deed within the time ordered, that plaintiff may apply to the court for such further orders and for such further proceedings as may be necessary to compel the observance and performance of the orders of the court; and that if, after the expiration of said twenty days, it shall be made to appear to the court that defendant has transferred or conveyed said land, or is unable to convey title to plaintiff, that then plaintiff have judgment against the defendant as damages in the sum of $144, with interest at the rate of 7 per cent per annum from April 6, 1914. On the second

cause of action the court ordered judgment in favor of the plaintiff for
$198, and interest.

(1) Appellant's first contention is that the contract executed July
24, 1912, was terminated by plaintiff's letter of July 27, 1912, and
that the trial court erred in holding that such original contract was
modified by the subsequent letters between the parties. Appellant con-
tends that the original contract must be entirely disregarded, and the
contract, if any, gathered solely from the subsequent letters. It is
immaterial whether we adopt the construction of the trial court, or the
one contended for by the appellant. The result must be the same. In
the letter of July 27, 1912, plaintiff notified defendant that he would
not deal on the terms outlined in the contract, but in the same letter
he offered to make the deal stipulated for in the contract on the condi-
tion that the price of the land be reduced $5 per acre. No other change
is suggested. In his reply defendant made the further condition that
plaintiff *"change the reading of the agreement* and let me (defendant)
pick $3,144 worth of goods from the stock, *as the contract reads."* It
will be noticed that in the letter (the conditions of which were agreed
to and unqualifiedly accepted by plaintiff), defendant expressly refers
to a modification or change of the contract. And defendant further
states that if this condition is agreed to, that he will make ready to
close the deal and get the goods out of plaintiff's way shortly. The sub-
sequent correspondence clearly shows that both parties considered that
the trade had been fully agreed upon. Either these letters modified
the original contract, or else they constituted a new contract. In either
event the former contract as modified by the letters constitutes the con-
tract between the parties, as the letters by reference to the former con-
tract clearly indicate the intention of the parties to be that such former
contract as modified by the letters shall constitute the agreement be-
tween them. This court has held that specific performance may be
compelled of a contract evidenced only by letters. See Mitchell v.
Knudtson Land Co. 19 N. D. 737, 124 N. W. 946.

(2) Appellant next contends that the court erred in requiring de-
fendant to select $3,144 worth of goods, and in retaining jurisdiction
of the case to enforce the provisions of its judgment. Appellant's coun-
sel says: "It is outside the provisions of any court to decree that the
defendant should select such goods when he declined so to do. It is

his right to repudiate his contract and pay what damage there has been done." This contention is untenable.

"Where land or any estate or interest in land is the subject-matter of the agreement, the jurisdiction to enforce specific performance is undisputed, and does not depend upon the inadequacy of the legal remedy in the particular case. It is as much a matter of course for courts of equity to decree a specific performance of a contract for the conveyance of real estate, which is in its nature unobjectionable, as it is for courts of law to give damages for its breach. Equity adopts this principle, not because the land is fertile, or rich in minerals, but because it is land, a favorite and favored subject in England and every country of Anglo-Saxon origin. Land is assumed to have a peculiar value, so as to give an equity for specific performance, without reference to its quality or quantity." (36 Cyc. 552.)

The rule announced by Cyc. was recognized by our legislature, and made part of our statutory law. See §§ 7189, 7194, Comp. Laws 1913. The power of a court of equity to retain jurisdiction and enforce performance of its decrees has received the sanction of this court, and is recognized by the highest authorities. See Mitchell v. Knudtson Land Co. supra; Pom. Eq. Jur. 3d ed. §§ 428, 1317, 1318; Pom. Eq. Rem. § 12; 16 Cyc. 499; 36 Cyc. 794.

(3) The defendant also complains because the court found the defendant to be the owner of the land. It is admitted by the pleadings that defendant represented himself to be the owner of the land at the time the contract was executed. Defendant's grantor was examined as a witness, and testified to the fact that he sold and conveyed the land to the defendant. Under the laws of this state, "it is presumed that a person is the owner of property from exercising acts of ownership over it or from common reputation of his ownership," and "that a thing once found to exist continues as long as is usual with things of that nature." (Comp. Laws 1913, subdiv. 12 and 32, § 7936.)

It is undisputed that at a date prior to the execution of the contract of exchange, the premises involved herein were sold and conveyed to the defendant by the former owner thereof. It is conceded that, prior to and at the time of the execution of the contract of exchange, defendant represented himself to the plaintiff to be the owner of such premises. After such representations, and pretending to be such owner, he exe-

cuted the contract. He did not see fit.to testify upon the trial or offer any evidence whatever to show that he was not such owner, or that he is unable for any reason to convey the premises. It is difficult to see how defendant can complain of the finding in question.

In discussing a somewhat similar question in Mitchell v. Knudtson Land Co. 19 N. D. 736, 743, 124 N. W. 946, this court, speaking through Chief Justice Morgan, said: "The record shows that the defendant held this land under a contract for its purchase which included other land, and the defendants' vendors refused to deed the land in suit unless the whole contract was complied with by paying the balance due on all land included in the contract. There is no showing that defendant cannot secure the conveyance of this land upon making such payment. If the defendants were unable to make such payments, that is not a showing of such inability to convey as would afford some reason for not conveying, which would warrant a court of equity in withholding its decree for specific performance. The most that can be said in this case is that it might be inconvenient for the defendants to arrange matters so that a conveyance can be given to plaintiff. The facts show that the defendants have refused to convey to plaintiff, pursuant to the contract, and this is sufficient to warrant a decree compelling a specific performance."

(4) The defendant next contends that the court adopted an erroneous basis in determining the amount of damages. The evidence shows that the defendant informed plaintiff in the latter part of December, 1912,. that he (defendant) would not perform. This action was commenced shortly thereafter, but was not brought on for trial until April 6, 1914.

The trial court made a finding that the amount of merchandise to be selected by the defendant from the stock of goods (of an invoice value of $3,144), at the time of the trial, had an actual cash value of not to exceed $1,400. Appellant therefore contends that the trial court must have based its alternative judgment for damages upon the value of the stock of goods as of the date of the trial, and not as of the date of the breach of the contract. And it is argued that under the holding of this court in Hart-Parr Co. v. Finley, 31 N. D. 130, L.R.A. 1915E, 851, 153 N. W. 137, the defendant had "the right to repudiate the contract, and pay whatever damages" the plaintiff had sustained by having his performance checked at that stage of its progress. Obviously a de-

cision relative to the amount of damages recoverable for the breach of an executory contract for the sale of personal property would not necessarily be authority upon the measure of damages to be awarded in lieu of specific performance in an action for the exchange or sale of real property. In fact our statutes fix a different measure of damages for the breach of a contract for the sale of personal property, from that fixed for the breach of a contract for the sale of real property. Nor are the courts by any means agreed that the same measure of damages applies in all cases wherein the vendor fails or refuses to convey real property. Some courts make a distinction between those cases wherein the vendor enters into the contract in good faith but is unable to convey by reason of some defect unknown to him at the time the contract was made, and those cases wherein the vendor acts in bad faith by failing or refusing to convey, or disables himself from conveying. See 39 Cyc. 2106 et seq.

It is unnecessary for us, however, in this case to consider which of these rules (if either) should prevail in this state. We are not dealing here with a case for damages for breach of a contract to convey real property, but with a case wherein plaintiff has elected to require defendant to perform his contract, and invoked the aid of equity to compel such performance. Nor are we dealing with a case wherein the defendant, in good faith, has entered into a contract but finds himself unable to convey on account of some defect unknown to him at the time the contract was made. The defendant in this case does not contend that any such condition exists. It is undisputed that he became the owner of the premises, and at the time of contracting represented himself to the plaintiff to be such owner. The defendant has at no time indicated any inability on his part to convey. It is not contended that defendant is unable to comply with the decree directing him to perform his contract. On the contrary, the record in this case shows that defendant is able to make such performance. In view of these facts it is difficult to see how defendant is in position to complain of the amount of damages fixed in the alternative judgment, or the method adopted by the court in computing such damages. The defendant, by complying with the court's decree and performing his contract, will be fully relieved from any possible liability to pay such judgment.

The practice of rendering an alternative judgment for damages in

an action for specific performance of a contract to convey real property has been approved by this court. See Mitchell v. Knudtson Land Co. 19 N. D. 736, 124 N. W. 946. And the power of the court, in the same action, to decree specific performance, and also.to award damages to compensate the plaintiff for the injury sustained by reason of a vendor's delay in conveying, is generally recognized and has received the sanction of this court. 26 Am. & Eng. Enc. Law, 86; 36 Cyc. 753; Pillsbury v. J. B. Streeter, Jr. Co. 15 N. D. 182, 107 N. W. 40; Beddow v. Flage, 22 N. D. 54, 132 N. W. 637.

In considering the allowance of such damages in Pillsbury v. J. B. Streeter, Jr. Co. supra, this court said: "The object to be aimed at·by courts of equity in such cases is to place the party without fault as nearly as possible in the same condition as he would have been in had there been no default by the other party. Pom. Spec. Perf. §§ 429, 430; Worrall v. Munn, 38 N. Y. 137; Bostwick v. Beach, 103 N. Y. 414, 9 N. E. 41. The defendant, having enjoyed the fruits of possession, cannot justly claim that it was unjustly prejudiced by the judgment compelling the payment of interest on the money withheld without legal cause."

In this case the evidence shows that the plaintiff owned a stock of merchandise of an invoice value of $4,245. The defendant was to select goods from this stock to the amount of $3,144 according to invoice prices. The plaintiff offered no evidence tending to show the actual value, but defendant's counsel went into this matter fully, and over objection elicited evidence to the effect that the amount of stock to which defendant was entitled was actually worth from $1,500 to $1,900 at the time the contract was made, and had depreciated in value about $400 between that date and the date of trial.

In order to be in a position to obtain specific performance of the contract, it was essential that plaintiff keep the entire stock of goods intact, so as to enable defendant to select the required portion therefrom. Plaintiff has kept the entire stock intact and inactive. The defendant has retained and enjoyed the benefit and profit of the real estate, and placed upon plaintiff the burden of keeping the purchase price, viz., the stock of goods to be exchanged for the land, intact and inactive. If defendant is permitted to avail himself of the alternative provision of the judgment by paying damages, the plaintiff will lose

not only the depreciation in value in the stock of goods, but will also lose the interest on the capital thus invested. While we are unable to determine the basis on which the trial court fixed the amount of damages, we are wholly satisfied that defendant has no cause for complaint. The error, if any, in fixing damages was in favor of the defendant. This is true both as to the alternative judgment itself, and the amount thereof.

(5) What has been said above refers to the first cause of action. On the second cause of action the court awarded judgment for $198, with interest from the date of trial. Appellant contends that this is erroneous for substantially the same reasons urged against the alternative judgment for damages, and what we have said in the preceding paragraph with respect thereto applies here. The plaintiff is entitled to be compensated for the damages sustained by reason of defendant's default. But while it is true that such damages may be recovered, it is also true that a foundation for such recovery must be laid in the complaint. Ordinarily damages cannot be awarded in an amount, exceeding that alleged and demanded in the complaint. If larger damages are sought, they should be brought in by amendment, or, in a proper case, by a supplemental pleading. See 31 Cyc. 440 et seq., 499 D, 2; 1 Enc. Pl. & Pr. 588 et seq.

In this case plaintiff saw fit to set up the value of the storage charges for the goods as a separate cause of action. He alleged in his complaint that the amount of such storage charges was $65, and demanded judgment for that amount. No amended or supplemental complaint was served or filed, nor was any amendment requested or allowed upon the trial. And there is nothing in the record to indicate that plaintiff expected or demanded judgment for a larger sum than $65. The defendant was entirely justified in believing that this was the maximum amount which would be awarded against him upon the second cause of action. We are also satisfied that the evidence does not warrant a judgment in the amount awarded upon the second cause of action, but does warrant a judgment for the amount demanded in the complaint.

We reach the conclusion, therefore, that the judgment rendered upon the first cause of action should be affirmed, but that the judgment upon the second cause of action should be reduced to $65 with interest. The

district court will modify its judgment accordingly, and as thus modified the judgment is affirmed. No costs shall be taxed to either party on this appeal.