2002 ND 86

MATRIX PROPERTIES CORPORA-
TION, a Minnesota corporation, for-
merly known as E.W. Wylie Corpora-
tion, Plaintiff and Appellee,

v.

TAG INVESTMENTS, a North Dakota
partnership, and James A. Grettum,
an individual resident of North Dako-
ta, Defendants and Appellants.

No. 20010228.

Supreme Court of North Dakota.

May 17, 2002.

Rehearing Denied June 5, 2002.

Sidney J. Spaeth, Vogel, Weir, Hunke & McCormick, Ltd., Fargo, for plaintiff and appellee.

Jonathan T. Garaas, Garaas Law Firm, Fargo, for defendants and appellants.

MARING, Justice.

[¶ 1] TAG Investments and James Grettum ("TAG") appealed from a post-judgment order awarding Matrix Properties Corporation, formerly known as E.W. Wylie Corporation, ("Matrix") $4,127.60 in costs, $48,642 in attorney fees, and $135,867.19 in damages for delay in conveying real property. We affirm the award of costs and attorney fees, and we modify the time for awarding damages for delay in conveying the land and remand for recalculation of those damages.

I

[¶ 2] This is the fourth reported appeal emanating from an action by Matrix against TAG for specific performance of an October 14, 1996 agreement granting Ma-

trix an option to purchase real property from TAG. In this appeal, TAG argues there is no procedural or statutory basis, including jurisdiction, for this money judgment, and the judgment is void or voidable. TAG also argues judicial estoppel bars Matrix from asserting inconsistent prejudgment and post-judgment positions, Matrix was only entitled to costs allowed by law, Matrix was not entitled to damages for loss of use of the property, and Matrix was not entitled to attorney fees. Our analysis of the issues raised by TAG requires a brief outline of the prior proceedings.

[¶ 3] In *Matrix Properties Corp. v. TAG Investments*, 2000 ND 88, 609 N.W.2d 737 (*Matrix I*), we affirmed a November 2, 1999 summary judgment granting Matrix specific performance of the option agreement. We held Matrix timely and unconditionally complied with the option agreement in early July 1999. *Id.* at ¶ 1. We rejected TAG's claims that Matrix did not precisely comply with the option's notice requirement, or allow the abstract to be procured in the manner called for in the option. *Id.* at ¶¶ 9–13. We also rejected TAG's claim that Matrix failed to comply with the option by not tendering the purchase money before the option deadline expired. *Id.* at ¶ 18. We concluded the term "purchase" did not require a tender of money, and the tender of the purchase price was an incident of performance, not a condition precedent to the exercise of the option. *Id.* at ¶¶ 14–18. We also concluded that, although the option to purchase had several contingencies regarding the sufficiency of TAG's title, an objective standard governed those contingencies and Matrix had a good faith duty to raise only reasonable objections to TAG's title. *Id.* at ¶¶ 23–24. We concluded that Matrix could not rescind the option at its whim, and the option was not conditional or illusory. *Id.* at ¶ 24.

[¶ 4] After our decision in *Matrix I*, Matrix sought an order declaring it was not obligated to make any additional option payments to TAG in 2000 to retain rights under the option. In a June 26, 2000 order, the trial court granted Matrix's motion, concluding "pursuant to the terms of the 1996 Option Agreement, [Matrix] is not obligated to make any Option Payments to [TAG] to retain rights under the Option Agreement and that [Matrix's] valid and timely exercise of the option in July of 1999 created a binding executory contract for the purchase and sale of real property." TAG simultaneously appealed to this Court and applied for a supervisory writ, claiming the trial court exceeded its jurisdiction, the order amended a final judgment that had been affirmed on appeal, the trial court did not have subject matter or personal jurisdiction to amend the judgment, the order was issued without due process and was in the nature of a declaratory judgment without service of a summons and complaint, and the hearing was conducted without proper notice.

[¶ 5] Meanwhile, on July 5, 2000, Matrix sought an order compelling TAG to provide Matrix with deeds for the property, or declaring the judicial transfer of the property to Matrix. On September 1, 2000, Matrix applied to this Court for a supervisory writ, asking us to clarify that the trial court retained jurisdiction to enforce the judgment despite TAG's pending appeal of the June 26, 2000 order. On September 25, we denied Matrix's application, indicating a trial court has continuing jurisdiction to enforce a judgment when no stay pending appeal has been granted.

[¶ 6] On October 24, 2000, Matrix again moved for an order compelling TAG to provide Matrix with deeds for the property, or declaring the judicial transfer of the property to Matrix. On November 8,

2000, the trial court ordered the judicial transfer of the property to Matrix on November 15. According to counsel for Matrix, counsel for TAG notified Matrix that TAG would not appear at the November 15 closing, and that TAG questioned the trial court's jurisdiction and raised a due process issue. TAG did not appear at the November 15 closing. On November 16, TAG asked this Court to vacate the November 8 order. We denied TAG's request on November 22, and on November 24, Matrix moved for an order judicially transferring the property. On December 6, 2000, TAG sought to remove the proceeding to the federal district court for North Dakota, and the federal district court remanded the case to state court on December 21.

[¶ 7] In the interim, on December 12, 2000, in *Matrix Properties Corp. v. TAG Investments*, 2000 ND 213, 622 N.W.2d 432 (*Matrix II*), we summarily affirmed the trial court's June 26, 2000 post-judgment order under N.D.R.App. 35.1(a)(1), and we awarded Matrix double costs under N.D.R.App. 38 and 39. On December 21, the trial court ordered TAG to appear on January 5, 2001, to convey the property. On January 5, the trial court ordered conveyance of the land to Matrix under N.D.R.Civ. 70. TAG moved to vacate the January 5 order as improperly modifying the November 2, 1999 summary judgment. On February 16, the trial court denied TAG's motion to vacate the January 5 order, and Tag appealed from the November 8, 2000 order, the January 5, 2001 order, and the February 16, 2001 order. On July 13, 2001, we summarily affirmed those orders under N.D.R.App. 35.1(a)(1) and (7), and we awarded Matrix double costs under N.D.R.App. 38 and 39. *Matrix Properties Corp. v. TAG Investments*, 2001 ND 128, 636 N.W.2d 674 (*Matrix III*).

[¶ 8] Meanwhile, in a March 26, 2001 motion, Matrix sought costs, attorney fees and damages incurred because of TAG's refusal to convey the property. The trial court continued Matrix's motion until after our decision in *Matrix III*. Matrix thereafter filed an amended motion, seeking litigation costs and attorney fees incurred after this Court's decision in *Matrix I*, and damages caused by TAG's refusal to convey the property from August 15, 1999, the date of the earliest possible closing under the option agreement, to January 5, 2001, the date the trial court ordered the transfer of the property to Matrix. The trial court awarded Matrix $4,127.60 in costs, $48,642 in attorney fees, and $135,867.19 in damages for loss of use of the property. TAG appealed.

## II

[¶ 9] TAG argues there is no procedural or statutory basis, including jurisdiction, for this money judgment, and it is void or voidable. TAG argues Matrix's motion

was an unprecedented post-judgment motion for damages in a specific performance action in which a final judgment had been entered almost two years earlier. Neither Matrix, nor the lower court, identified the legal basis for the unprecedented award of "costs," "damages," and "attorney fees" two years after a final judgment had been entered. The post-judgment motion procedure sanctioned by the lower court utterly denied TAG and Grettum their right to proper pleadings notifying them of the issues of the lawsuit, discovery, trial of issues of fact and a judicial decision based upon properly introduced evidence considered in light of the law. In other words, TAG and Grettum were denied due process of law.

■ [¶ 10] In an action for specific performance, a purchaser may recover damages from a seller for delay in conveying real property and the costs, if any, of recovering possession of the land. *See* N.D.C.C. § 32–03–21; *Bumann v. Maurer*, 203 N.W.2d 434, 438 (N.D.1972); *Orfield v. Harney*, 33 N.D. 568, 579–81, 157 N.W. 124, 127 (1916); *Beddow v. Flage*, 22 N.D. 53, 60, 132 N.W. 637, 640 (1911); *Mitchell v. Knudtson Land Co.*, 19 N.D. 736, 744, 124 N.W. 946, 950 (1910). *See generally*, Annot., *Special or Consequential Damages Recoverable, On Account of Delay in Delivering Possession, by Purchaser of Real Property Awarded Specific Performance*, 11 A.L.R.4th 891 (1982); Annot., *Specific Performance: Compensation or Damages Awarded Purchaser for Delay in Conveyance of Land*, 7 A.L.R.2d 1204 (1949); 71 Am.Jur.2d *Specific Performance* § 236 (2001).

[¶ 11] In *Cokins v. Frandsen*, 136 N.W.2d 377, 380 (N.D.1965), however, we said a judgment on the merits is conclusive between the parties, not only as to every matter that was litigated but also as to every matter arising out of the same cause of action which might have been litigated. *See also Wolf v. Anderson*, 422 N.W.2d 400, 401–02 (N.D.1988) (holding prior judgment that sellers were not entitled to specific performance in action for breach of contract for deed was res judicata and precluded subsequent action for damages where both actions were based on same factual situation); *Perdue v. Knudson*, 179 N.W.2d 416, 421–22 (N.D.1970) (same). In *Cokins*, at 377–78 (Syllabus ¶¶ 1 and 3), we said a judgment decreeing specific performance of a contract and determining the rights of the parties is final, and any subsequent order to modify the final judgment is void unless made for the purpose of amending, correcting, or carrying out the judgment. In *Cokins*, 379–80, we held a post-judgment order regarding proration of taxes during a delay in conveying property was void where a prior final judgment granting specific performance of a contract for the sale of land settled all issues between the parties arising out of the contract.

[¶ 12] Here, in ordering the January 5, 2001 judicial transfer of the property, the trial court cited N.D.R.Civ.P. 70, which provides:

If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. If real or personal property is within the state, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk.

[¶ 13] Rule 70, N.D.R.Civ.P., is nearly identical to corresponding F.R.Civ.P. 70, and we have often said when a state rule is adopted from a federal rule, we will consider the federal court's interpretation of its rule as persuasive authority for construing our rule. *See Mid–Dakota Clinic,*

*P.C. v. Kolsrud,* 1999 ND 244, ¶ 6, 603 N.W.2d 475; *City of Dickinson v. Lindstrom,* 1998 ND 52, ¶ 11, 575 N.W.2d 440. *See also* N.D.R.Civ.P. 1, Explanatory Note.

[¶ 14] Relief under F.R.Civ.P. 70 is available only after a judgment is entered. *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 218, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). *See* 13 James W. Moore, *Moore's Federal Practice* ¶ 70.03 (3rd ed.2002); 12 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2nd,* § 3021 (1997). Both F.R.Civ.P. 70, and N.D.R.Civ.P. 70 specifically contemplate "application of the party entitled to performance." Under F.R.Civ.P. 70, parties may proceed by motion ancillary to the original action to compel the specific performance of an act required by a judgment. *See Spain v. Mountanos,* 690 F.2d 742, 744 (9th Cir.1982); *Gilbert v. Johnson,* 490 F.2d 827, 829 (5th Cir.1974). *Cf., Clarke v. Chicago, B. & Q.R. Co.,* 62 F.2d 440, 441 (10th Cir.1932) (under former equity rules). *See also Linscott v. Foy,* 1998 ME 206, ¶ 9, 716 A.2d 1017 (1998) (under M.R.Civ.P. 70); *Scott v. Majors,* 1999 UT App 139, ¶ 4–6, 980 P.2d 214 (1999) (under Utah R.Civ.P. 70).

[¶ 15] In *Spain,* 690 F.2d at 745, the court affirmed an additional award of attorney fees incurred in a proceeding under F.R.Civ.P. 70 to collect an initial $70,000 award of attorney fees ordered in a stipulated judgment enjoining certain prison practices. No issue was raised about the procedure for awarding additional attorney fees as part of the ancillary proceeding under F.R.Civ.P. 70. In *Linscott,* 1998 ME 206, ¶ 9, 716 A.2d 1017, no procedural issue was raised in a case where, as part of the original proceeding, the plaintiff filed a supplemental petition for attorney fees and a setoff of the purchase price after obtaining an order transferring prop-

erty under M.R.Civ.P. 70. The Maine Supreme Judicial Court affirmed the award of attorney fees and costs as a sanction for "egregious" actions by the defaulting party. *Linscott,* at ¶¶ 16–19. Those authorities suggest an ancillary motion is an appropriate procedure for a court to consider issues dealing with a party's failure to comply with a judgment requiring specific performance for a conveyance of property.

[¶ 16] In *Westlake North Prop. Owners v. Thousand Oaks,* 915 F.2d 1301, 1303 (9th Cir.1990), the Ninth Circuit Court of Appeals cited *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395–97, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), for the principle that imposition of a sanction under F.R.Civ.P. 11 is a collateral issue which may be made after the main action has been terminated. Although in *Westlake,* at 1303–04, the Ninth Circuit ultimately concluded the trial court erred in sanctioning non-party attorneys under F.R.Civ.P. 70, the court said the trial court had jurisdiction to impose sanctions against parties under F.R.Civ.P. 70 regardless of whether the trial court had jurisdiction over the main action.

[¶ 17] In *Cooter & Gell,* 496 U.S. at 395–96, 110 S.Ct. 2447 (citations omitted), the United States Supreme Court said:

It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction. See 28 U.S.C. § 1919. This Court has indicated that motions for costs or attorney's fees are "independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree." Thus, even "years after the entry of a judgment on the merits" a federal court could consider an award of counsel fees. A criminal contempt

charge is likewise " 'a separate and independent proceeding at law' " that is not part of the original action. A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated. Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated.

[¶ 18] Similarly, in *American State Bank v. Stoltz*, 345 N.W.2d 365, 367 (N.D. 1984), we recognized this state's settled law that a supplementary proceeding in aid of execution is not a new or separate action, but is merely a proceeding in a pending action against a judgment debtor. We said a supplementary proceeding was not an action on the judgment, but was a continuation of, and auxiliary to, the original action. *Id.* In *Stoltz*, at 367, we rejected a judgment debtor's claim the trial court lost personal jurisdiction over him when the judgment was entered.

[¶ 19] In *Mitchell*, 19 N.D. at 744, 124 N.W. at 950 (quoting from Pomeroy on Contracts (2nd ed. § 474)) we said:

"All the instances in which equity thus awards damages, either in place of or in addition to some other special remedy, are particular applications of the one general principle, that complete justice should be done between litigant parties whenever jurisdiction has been acquired over them to grant any relief. This doctrine is well established, and is indeed, too familiar to require the citation of authority that whenever a court of equity has once acquired jurisdiction of a cause it will retain such cause in order to do full and complete justice between the parties with respect to the subject matter. To this end, when jurisdiction has been obtained on other grounds and for the purpose of administering an equitable remedy, damages may be assessed and adjudged in lieu of or as ancillary to the equitable relief so that the plaintiff may not be put to the trouble, expense, and delay of a second suit brought in another tribunal."

Our statements in *Mitchell* about ancillary relief and the trouble, expense, and delay of a second action are equally applicable under our current rules of civil procedure, which govern the procedure in all suits of a civil nature, whether cognizable as cases at law or in equity, and which are construed to secure the just, speedy, and inexpensive determination of every action. *See* N.D.R.Civ.P. 1. The statements in *Mitchell* are also consistent with N.D.C.C. § 27–05–06(3), which confers jurisdiction on district courts for "[a]ll the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carrying into effect their judgments, orders, and other determinations."

[¶ 20] Here, shortly after Matrix exercised the option to purchase the land in early July 1999, it initiated an action for specific performance of the option agreement. In November 1999, the trial court granted Matrix summary judgment for specific performance of the option agreement without any claim for, or award of, damages for delay in conveying the land. On June 7, 2000, this Court issued its mandate affirming the summary judgment for specific performance. Matrix then moved for an order compelling TAG to transfer the property and subsequently indicated it would seek costs, attorney fees,

and damages for TAG's delay in conveying the property. After procedural posturing and further delay by TAG, the trial court ultimately ordered the transfer of the land to Matrix on January 5, 2001, and Matrix then moved for costs, attorney fees, and damages incurred as a result of TAG's delay in conveying the land. Under these circumstances, we conclude Matrix's ancillary motion for costs, attorney fees, and damages was an appropriate vehicle, as part of enforcement of the judgment under N.D.R.Civ.P. 70, for the trial court to consider awarding costs, attorney fees, and damages incurred by a delay in conveying the land. However, because Matrix could have but did not make a claim for damages for delay in conveyance in the judgment that this Court affirmed in *Matrix I*, we conclude Matrix may be entitled to damages only for a delay in conveying the land after our June 7, 2000 mandate in *Matrix I*. *See Wolf*, 422 N.W.2d at 401–02; *Perdue*, 179 N.W.2d at 421–22; *Cokins*, 136 N.W.2d at 380.

[¶ 21]   We also reject TAG's arguments that N.D.C.C. § 27–05–27 places exclusive authority to modify a judgment in the trial judge that rendered the November 1999 judgment, and that this money judgment, which was issued by a different trial judge, is void, or erroneously issued and voidable.

[¶ 22]   Section 27–05–27, N.D.C.C., provides:

> Except as provided by subsection 2 of section 29–15–21, any motion for a new trial, settlement of a proposed case, judgment notwithstanding the verdict, or vacation or modification of an order, judgment, or other proceeding, must be presented and heard before the judge before whom the matter was heard, considered, or determined, unless for any reason the judge is unable to act.

[¶ 23]   The language of N.D.C.C. § 27–05–27 applies to "any motion for a new trial, settlement of a proposed case, judgment notwithstanding the verdict, or vacation or modification of an order, judgment, or other proceeding." This ancillary proceeding emanated from a proceeding for the enforcement of a judgment for specific performance, and the plain language of that statute does not apply to the enforcement of a judgment. We conclude N.D.C.C. § 27–05–27 does not apply to this ancillary proceeding.

III

[¶ 24]   TAG argues Matrix was not entitled to damages for loss of use of the property.

A

[¶ 25]   TAG argues Matrix was not entitled to any damages, because Matrix never made an unconditional tender of performance and the earliest date it can claim a tender of part of the money due to TAG was January 5, 2001, the date the trial court ordered conveyance of the land.

[¶ 26]   TAG misreads a statement in *Matrix II*, 2000 ND 213, ¶ 1, 622 N.W.2d 432, "requiring TAG and Grettum to convey the subject property upon tender by Matrix of the purchase price set in the 1996 option agreement." According to TAG, that language "conclusively determined that TAG's duty to convey was conditioned upon the tender of performance by Matrix." In *Matrix I*, 2000 ND 88, ¶¶ 1, 14–18, 609 N.W.2d 737, however, we clearly held that Matrix "timely and unconditionally complied with the option agreement." Our decision in *Matrix I* is the law of the case regarding Matrix's compliance with the option, *see Tom Beuchler Const. v. City of Williston*, 413 N.W.2d 336, 339 (N.D.1987), and it is a strained interpretation of *Matrix I* for

TAG to argue that Matrix has not unconditionally complied with the option agreement. To the extent TAG now claims it had no duty to convey the property until Matrix made a full and actual tender of the purchase price to TAG, we again reiterate and clarify, for TAG's benefit, that Matrix timely and unconditionally complied with the option agreement and was entitled to performance under the option agreement. To the extent TAG claims it did not delay transfer of the property because Matrix purportedly did not make a full and complete tender or actual payment of the purchase price, we reject TAG's arguments involving that assertion. *See Matrix I*, at ¶¶ 1, 14–18.

### B

[¶ 27] TAG argues even if Matrix is entitled to damages, the trial court erred in calculating those damages. TAG states, in calculating damages, the trial court followed Matrix's "claim that it should have interest on the liquidated purchase price of the real property from August 15, 1999, the time Matrix should have first paid TAG [under the terms of the option agreement], to January 5, 2001," the date the trial court transferred the land to Matrix. TAG argues if Matrix is entitled to damages, those damages are limited to the rental value of the land, or an accounting and delivery of the fruits of the illegitimate possession, offset by interest on the purchase price of the land due to TAG. Because of our earlier conclusion about the time frame for damages and the procedural posture of this issue, we only need consider whether Matrix was entitled to damages for TAG's delay in conveying the land after this Court's June 7, 2000 mandate in *Matrix I* to the trial court's judicial conveyance of the land to Matrix on January 5, 2001.

[¶ 28] Section 32–03–21, N.D.C.C., provides:

> The detriment caused by the wrongful occupation of real property in cases not embraced in sections 32–03–22, 32–03–27, 32–03–28, and 32–03–29 is deemed to be the value of the use of the property for the time of such occupation, not exceeding six years next preceding the commencement of the action or proceeding to enforce the right to damages and the costs, if any, of recovering the possession.

[¶ 29] Under N.D.C.C. § 32–03–21, a seller who wrongfully occupies real property and wrongfully delays the conveyance of that property is liable for the value of the use of the property for the time of such occupation. *Bumann*, 203 N.W.2d at 438; *See also Orfield*, 33 N.D. at 579–81, 157 N.W. at 127; *Beddow*, 22 N.D. at 60, 132 N.W. at 640; *Mitchell*, 19 N.D. at 744, 124 N.W. at 950. In *Bumann*, at 438, we said the value of the use may be found by requiring the party at fault to make an accounting and deliver over the fruits of the illegal possession, or to pay the fair rental value of the property. We also said the delay in performance of an agreement to convey land may be the root of special as well as general damages to the buyer. *Id.* at 439. We cautioned, however, that double recovery should not be given, first as general damages, and again as an item of special damages. *Id.*

[¶ 30] We have recognized the object of a court of equity is to place parties who are not at fault as nearly as possible in the same position they would have been in if there had been no default by the other party. *Orfield*, 33 N.D. at 579–81, 157 N.W. at 127; *Pillsbury v. J.B. Streeter, Jr., Co.*, 15 N.D. 174, 182, 107 N.W. 40, 43 (1906). When a conveyance of property is delayed, financial adjustments in the nature of an accounting may be made to put

the parties in the same position they would have been in if the contract had been performed in a timely manner. *See generally* Annot., 11 A.L.R.4th at pp. 892–97; Annot., 7 A.L.R. 2nd at § 1.

[¶ 31] Here, we reject TAG's claim it was entitled to an offset for interest on the purchase price of the land during the time TAG delayed conveying the land to Matrix. This record unequivocally demonstrates a pattern of dilatory and vexatious conduct by TAG in delaying the conveyance of the land to Matrix. Moreover, under the option agreement, Matrix was entitled to possession of the land on August 15, 1999. Although we have concluded Matrix could have but did not make a claim for damages from that date in the judgment that was affirmed in *Matrix I,* TAG agrees the trial court awarded Matrix interest on the purchase price of the land from August 15, 1999 to January 5, 2001, which was a valuation suggested by TAG when, in seeking to avoid closing on January 5, 2001, TAG claimed it should receive interest on the purchase price during the same time period. Matrix did not receive the fruits of TAG's unlawful possession, or the rental value of the land during the time when TAG delayed conveying it. TAG retained the benefits from the land during the delay in conveying it, and TAG does not dispute Matrix's claim that the property is prime development land. Under those circumstances, we conclude Matrix was entitled to the measure of damages awarded by the trial court for the delay in conveying the land from this Court's June 7, 2000 mandate in *Matrix I* to January 5, 2001, the date the trial court ordered the conveyance of the land to Matrix. Accordingly, we remand this issue to the trial court to compute Matrix's damages during that time period.

## IV

[¶ 32] TAG argues Matrix was not entitled to costs and attorney fees.

[¶ 33] If there is a delay in conveying land, N.D.C.C. § 32–03–21, authorizes the award of the "costs, if any, of recovering the possession." *See Bumann,* 203 N.W.2d at 438. Section 28–26–01(2), N.D.C.C., authorizes the award of reasonable actual and statutory costs, including reasonable attorney fees, for defending a frivolous claim. *See In re Estate of Dion,* 2001 ND 53, ¶ 45–47, 623 N.W.2d 720. In *Dion,* at ¶ 47, we affirmed a trial court's decision to award attorney fees incurred by a party in defending against frivolous post-trial motions by another party.

[¶ 34] In *Matrix II* and *Matrix III,* we summarily affirmed two prior appeals by TAG in part under N.D.R.App.P. 35.1(a)(1), which authorizes affirmance of appeals that are frivolous and completely without merit. This record demonstrates that TAG has engaged in a protracted and dilatory pattern of conduct after this Court's decision in *Matrix I,* repeatedly pressing spurious claims that previously had been rejected by the trial court and this Court. *See Dion,* 2001 ND 53, ¶ 47, 623 N.W.2d 720. Under the circumstances of this case, we conclude N.D.C.C. §§ 32–03–21 and 28–26–01(2), authorize an award to Matrix of litigation costs and attorney fees for recovering possession of the land.

[¶ 35] A trial court has considerable discretion in awarding costs and attorney fees, and its decision will not be overturned on appeal absent an abuse of discretion. *Dion,* 2001 ND 53, ¶¶ 44, 46, 623 N.W.2d 720; *Gissel v. Kenmare Township,* 512 N.W.2d 470, 477 (N.D.1994). Here, the trial court was well aware of the dilatory nature of TAG's conduct in these proceedings. The court indicated it had reviewed the affidavits setting forth the specific costs and attorney fees and the time when they were incurred. Under the

circumstances of this case, we conclude the trial court did not abuse its discretion in awarding Matrix litigation costs and attorney fees.

## V

[¶ 36]   TAG argues judicial estoppel bars Matrix from asserting inconsistent prejudgment and post-judgment positions.

[¶ 37]   TAG did not raise this argument in its August 21, 2001 brief in response to Matrix's motion for costs, attorney fees, and damages, and TAG is precluded from raising the issue for the first time on appeal.   *See Robert v. Aircraft Inv. Co. Inc.*, 1998 ND 62, ¶ 14, 575 N.W.2d 672.   Moreover, TAG's argument appears to be based in part on its misplaced assertion that Matrix did not unconditionally comply with the option agreement, an assertion we specifically rejected in *Matrix I* and explicitly have reiterated for TAG's benefit in this case.   Accordingly, we reject TAG's argument about judicial estoppel.

## VI

[¶ 38]   As Justice Vogel wrote for this Court in *City of Wahpeton v. Drake–Henne, Inc.*, 228 N.W.2d 324, 331 (N.D.1975) (quoting from *Bros. Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 597–98 (5th Cir. 1963)), " ' "It is for the public interest and policy to make an end to litigation . . .' so that ' . . . suits may not be immortal, while men are mortal." ' "   Those comments are especially applicable to the protracted proceedings in this case.

## VII

[¶ 39]   We affirm the trial court's award of costs and attorney fees, and we modify the time period for the award of damages and remand for recalculation in accordance with this opinion.

VANDE WALLE, C.J., NEUMANN, SANDSTROM, JJ., and WILLIAM F. HODNY, Surrogate Judge, concur.

[¶ 40] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.